Helen Perry sued Hyundai Motor America, Inc. ("Hyundai"), and Jim Burke Motors, Inc., in the Jefferson Circuit Court, alleging fraud, breach of warranty, and other causes of action arising from her purchase of an automobile. The circuit *Page 862 
court ordered her to arbitrate her claims. She petitions for a writ of mandamus directing the circuit court to set aside its arbitration order. We deny the writ.
Mrs. Perry alleges that Jim Burke Motors, an automobile dealership, hurried her through the purchase of her new Hyundai automobile and did not give her an opportunity to read the purchase-agreement form before she signed it. That purchase-agreement form contained an alternative-dispute-resolution agreement that required the purchaser to arbitrate "all disputes and controversies" with the seller.
Mrs. Perry began experiencing electrical problems with the car shortly after she purchased it. She contends that the dealership was unable to repair the electrical problems, and that its failure to repair resulted in her suing Jim Burke Motors (the dealership) and Hyundai (the manufacturer). She alleged fraud and misrepresentation in the sale of the car; suppression of material facts regarding the car; negligence; wanton or willful misconduct on the part of employees of Jim Burke Motors, both during the sale of the car and during her subsequent attempts to get the car serviced and/or replaced; breach of warranty (her breach-of-warranty claim included a claim under the Magnuson-Moss Act, 15 U.S.C. § 2301 et seq.); violation of Ala. Code 1975, § 8-20A-1 et seq. (the "Alabama Lemon Law"); and the tort of outrage. Mrs. Perry claims that when she filed her action she was not aware of any arbitration agreement, but she later amended her complaint to allege fraud, misrepresentation, and/or suppression of material fact in regard to the formation of the arbitration agreement.
Jim Burke Motors and Hyundai Motors filed motions to compel arbitration. Judge Jack Carl held a hearing on the motions and then granted them.
Mrs. Perry challenges the validity of the arbitration clause because of the manner in which she signed the purchase contract. She alleges that she was rushed through the contracting process and that the arbitration agreement was entered into during the contracting process and, therefore, that the arbitration agreement is unenforceable.
This Court has stated many times that the writ of mandamus is an extraordinary remedy and that one seeking it must show "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991); see also,Martin v. Loeb Co., 349 So.2d 9 (Ala. 1977); Ex parte Houston County,435 So.2d 1268 (Ala. 1983); Ex parte Johnson, 638 So.2d 772 (Ala. 1994). "Mandamus is an extraordinary remedy and will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner except where there is an abuse of discretion." State v. Cannon, 369 So.2d 32,33 (Ala. 1979).
The arbitration provision in Mrs. Perry's contract was styled "Dispute Resolution Agreement." It stated:
 "Buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between Buyer and Jim Burke Motors, Inc. arising out of or in connection with the purchase of this vehicle will be resolved by arbitration in accordance with the procedure set forth on the reverse side of the buyer's order."
Mrs. Perry seeks to avoid the arbitration agreement on the basis that the dealer did not adequately disclose to her the existence of that agreement.
Mrs. Perry argues that she was confused regarding her agreement to arbitrate. She alleges that her confusion regarding the arbitration agreement caused her to be confused as to the entire contract. The record indicates that Mrs. Perry was capable of reading and inquiring into the contents of the contract before she *Page 863 
signed the agreement, and that she signed it voluntarily. The contract language was clear. The trial court correctly decided against Mrs. Perry on the question whether her confusion was so great as to entitle her to avoid the agreement. Mrs. Perry did not present in support of her fraud allegation evidence directed solely at the arbitration agreement. Therefore, as a matter of law, Mrs. Perry does not have a claim for fraud directed solely at the arbitration clause. PrimaPaint Corp. v. Flood Conklin Mfg Co., 388 U.S. 395 (1967); Jones v.Merrill Lynch, Pierce, Fenner Smith, Inc., 604 So.2d 332 (Ala. 1991).
Mrs. Perry, relying on Allstar Homes, Inc. v. Waters,711 So.2d 924 (Ala. 1997), argues that when a party contends that an arbitration agreement was not formed "knowingly, willingly, and voluntarily," the question whether it was is to be answered by a jury and that no presumption favoring arbitration should be applied. Mrs. Perry contends that she presented the trial court substantial evidence indicating that she did not knowingly, willingly, and voluntarily agree to arbitrate any disputes arising from her purchase of the automobile. She claims that the trial court erroneously ignored this evidence and not only refused to grant a jury trial of the issues raised, but resolved all doubts in favor of the existence of the arbitration agreement. Mrs. Perry argues that the trial court's actions are contrary to the law announced by this Court inAllstar Homes.
Allstar Homes contains language that could be construed to mean what Mrs. Perry argues. However, we disagree with that construction and offer a clarification of that part of this Court's 1997 opinion in Allstar Homes
that would lead a party to believe that merely alleging fraudulent inducement as to the arbitration clause in an agreement allows that party to avoid the arbitration agreement. A party must provide substantial evidence of fraud in the inducement, particularly related to the arbitration clause, in order to avoid arbitration.
The majority's analysis in Allstar Homes confused the question of the validity of an arbitration clause and the question of fraud in the inducement of a contract containing an arbitration clause. The United States Supreme Court distinguished between these two questions in decisions rendered before this Court decided Allstar Homes. We explain our perception of the United States Supreme Court's analysis and conclusions inPrima Paint, supra, and First Options of Chicago, Inc. v. Kaplan,514 U.S. 938 (1995).
In Prima Paint, the Supreme Court held that in cases governed by the Federal Arbitration Act, 9 U.S.C. § 1-16, issues concerning fraud in the inducement of a contract in general should be decided by an arbitrator, while claims of fraud in the inducement of an arbitration agreement in particular should be decided by the trial court. Mrs. Perry presented insufficient evidence of fraud committed by Hyundai or Jim Burke Motors with respect to inducing her to agree to the specific clause requiring arbitration of disputes. She simply alleges that she did not take the time to read the entire contract and that Jim Burke Motors was under a duty to specifically point out the arbitration provision to her.
First, we note that one has no duty to disclose a specific provision of a contract, even if it deals with alternative dispute resolution. Second, Mrs. Perry was responsible for reading the contract, to which she committed herself when she signed. If she felt hurried, she could have slowed the process down or could have refused to sign the contract until she had had time to read it in its entirety. At the bottom of the "Buyer's Order" appears this precautionary statement: "Caution: it is important that you read this buyer's order thoroughly before you sign it." *Page 864 
To support its decision in Allstar, this Court expanded too broadly the rationale of the Supreme Court in First Options. The Supreme Court stated in First Options:
 "The first question — the standard of review applied to an arbitrator's decision about arbitrability — is a narrow one. To understand just how narrow, consider three types of disagreement present in this case. First, the Kaplans and First Options disagree about whether the Kaplans are personally liable for MKI's debt to First Options. That disagreement makes up the merits of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the arbitrability
of the dispute. Third, they disagree about who should have the primary power to decide the second matter. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)? We consider here only this third question."
514 U.S. at 942, 115 S.Ct. 1920. The question in First Options was a narrow one, and it is not the question the Supreme Court addressed inPrima Paint.
The facts of Prima Paint are distinguishable from the facts in FirstOptions. In First Options, the Court held that because one of the parties objecting to arbitration had not signed the arbitration portion of the contract, that party could not be compelled to arbitrate the dispute. Like Mrs. Perry's case, Prima Paint involved an allegation that the contract itself was not valid; in that case, Prima Paint Corporation claimed it had been fraudulently induced into signing the contract containing the arbitration clause. However, because the contract stated that all issues relating to disputes concerning the contract and the arbitration thereof were to be resolved through arbitration, the Supreme Court determined that arbitration was the appropriate forum for the dispute. Moreover, that Court's decision in First Options supports our conclusion in the present case. The Supreme Court stated:
 "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration."
514 U.S. at 943, 115 S.Ct. 1920.
In the present case, the contract contained an arbitration clause, which stated that all issues arising out of a dispute as to the contract itself were to be resolved by arbitration. Mrs. Perry signed this contract, and now, based on all the facts alleged in her complaint, she has alleged fraud in the inducement of the contract.[1] Consequently, because the arbitration clause specifies that disputes concerning the validity of the contract are to be resolved through arbitration, the appropriate forum for deciding questions regarding the validity of the arbitration clause is arbitration rather than a lawsuit.
Mrs. Perry has not presented to this Court a question like the question presented to the Supreme Court in First Options. That question was whether the parties had agreed to arbitrate the issue of "First Options
arbitrability."[2] There is no statement in the contract between Mrs. Perry and Jim Burke Motors as to who decides the issue of "FirstOptions arbitrability" — *Page 865 
an arbitrator or a court. Neither Jim Burke Motors nor Hyundai has alleged that the contract contained such a provision. Therefore, the question presented in First Options does not arise in our review of Mrs. Perry's claim that arbitration is not appropriate. An issue like that addressed by the Supreme Court in First Options was before this Court in Allstar because, in that case, Allstar claimed its arbitration clause gave the arbitrator the duty to decide the question of "First Options arbitrability." However, this Court held against Allstar, stating that the contract lacked "clear and unmistakable evidence"[3] indicating that the parties had agreed to having an arbitrator determine "First Options arbitrability."
This Court's opinion in Allstar seems to confuse the two analyses — (1) which forum decides "First Options arbitrability" and (2) which forum determines whether there was fraud in the inducement. Those two questions involve very different analyses, both in timing and in standard of review. The Allstar Court misread the Supreme Court's analysis inFirst Options. In First Options, the Supreme Court stated:
 "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so."
514 U.S. at 944, 115 S.Ct. 1920. Allstar misconstrued this statement to mean that even when the parties have validly entered a contract and have agreed to the provisions contained in the contract, including an arbitration clause, the court is to decide the question whether the issue of fraud in the inducement of the contract is subject to arbitration.
We do not disagree with the holding of Allstar, because we believe in that case the Court correctly held that there was not "clear and unmistakable evidence" of an agreement to arbitrate "First Options
arbitrability." However, language in Allstar should be clarified. Instead of reading First Options narrowly, as the Supreme Court stated it should be read, the Allstar Court read Prima Paint narrowly, relying on a federal case from the United States Court of Appeals for the Ninth Circuit, Three Valleys Municipal Water District v. E.F. Hutton Co.,925 F.2d 1136, 1140-41 (9th Cir. 1991) (quoted with approval inShearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613, 616 (Ala. 1994)).
Three Valleys involved an arbitration agreement between a governmental entity and a securities corporation. The appellate court in that case addressed the question whether the individual that signed the contract containing the arbitration agreement was actually authorized to sign such a document for the governmental entity. Therefore, the question in Three Valleys was whether there ever existed an agreement to arbitrate in the first place. The Three Valleys court stated: "[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of theexistence of an agreement to arbitrate. Only a court can make that decision." Three Valleys, 925 F.2d at 1140-41. In other words, a trial court must determine the question whether the contract containing the arbitration agreement is void ab initio or merely voidable. In the case of a voidable contract, the arbitrator makes the decision. Neither the existence of the arbitration agreement nor the question whether the contract is void ab initio is an issue in Mrs. Perry's case, and neither was an issue inPrima Paint or Allstar.[4] *Page 866 
Therefore, this Court should not have relied upon Three Valleys to justify the language of the Allstar opinion.
The language of the Allstar Court, which confused a claim of fraud in the inducement of the contract in general and a claim alleging the nonexistence of an agreement to arbitrate, also seemed to merge the issue of the scope of the arbitration clause and the question of "First Options
arbitrability," and it applied the "clear and unmistakable evidence" standard of First Options to both issues, by defining the question of the enforcement of arbitration agreements as equivalent to the question of who determines "First Options arbitrability:"
 "This view of Prima Paint is the better means of reconciling the United States Supreme Court's `rule of severability,' which allows the enforcement of an arbitration agreement within an otherwise unenforceable contract, with § 3 and § 4 of the [Federal Arbitration Act], which require the court to rule on disputes concerning the making or enforcement of arbitration agreements, i.e., the `arbitrability' of claims, before such claims can be submitted to arbitration."
711 So.2d at 927. The narrow question of "First Options
arbitrability," as admitted by the Supreme Court in First Options, is not the same as the question whether there exist "disputes concerning the making or enforcement of arbitration agreements." The Allstar Court apparently confused these two concepts, because it agreed with Justice Black's dissent in Prima Paint, which argued that the severability principle was unworkable. A dissent from an opinion of the United States Supreme Court cannot be more binding upon this Court than the majority opinion to which that dissenting opinion was directed. Therefore, one must conclude that the language quoted above from Allstar is incorrect.[5]
A proper understanding of the application of Prima Paint andFirst Options is as follows:[6] When there is evidence *Page 867 
indicating that the parties entered into a contract providing for the arbitration of "First Options arbitrability," the trial court will determine whether there is "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide that issue.[7] If there is "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide "First Options arbitrability," then the arbitrator shall determine all issues involving arbitrability, e.g., waiver, enforceability, validity, scope of the arbitration agreement, etc. If the arbitrator determines that the trial court has the responsibility for determining an issue like scope or waiver, then the trial court will decide that issue. At the same time, the trial court will determine whether the party alleging fraud in the inducement solely of the arbitration agreement has presented sufficient evidence of such fraud. Otherwise, any issue arising from the formation of the contract, including fraud in the inducement of the contract or any provision contained within the contract (other than the arbitration provision) should be resolved through arbitration.
On the other hand, if the contract contains no evidence of an agreement to arbitrate "First Options arbitrability," or if the trial judge determines that the evidence of such an agreement is not "clear and unmistakable," then the trial judge follows traditional contract principles in determining whether there exists an arbitration agreement and whether the contract involves interstate commerce, to determine whether to compel arbitration. The trial court's analysis would include the analysis ofPrima Paint if fraud in the inducement of the arbitration clause in particular is alleged and that allegation is supported by substantial evidence.
This Court's opinion in Allstar subtly undermined the United States Supreme Court's ruling in Prima Paint by redefining what kind of "arbitrability" the Supreme Court referred to in First Options. In Allstar, this Court stated:
 "However, the Court [in First Options] emphasized that the preliminary question of arbitrability, i.e., whether the parties ever actually agreed to the arbitration clause itself, thereby relinquishing their right to a court's decision about the merits of a dispute, is not subject to a presumption favoring arbitration."
Allstar, 711 So.2d at 928. This language in Allstar impliedly reversed the principle of allowing arbitration of the issue of fraud in the inducement of the contract, as stated in Prima Paint. The question of "First Options arbitrability," as explained above, cannot be defined as "whether the parties ever actually agreed to the arbitration clause itself."
This Court, in Investment Management Research, Inc. v. Hamilton,727 So.2d 71 (Ala. 1999), further clarified the rule as to who — the court or the arbitrator *Page 868 
— is to decide issues concerning arbitration when a party alleges fraud in the inducement. The Court stated:
 "[W]hen a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court. On the other hand, when a claim of fraud in the inducement is directed toward the entire contract, as in this case, the issue is subject to arbitration."
Id. at 78. Because Mrs. Perry claimed fraud in the inducement of the "entire contract," this issue must be resolved under the terms of the arbitration agreement contained in the contract. The resolution should follow the principle stated in Prima Paint and not the principle stated inFirst Options.
Mrs. Perry also contends that, under Northcom, Ltd. v. James,694 So.2d 1329 (Ala. 1997), the trial court's order compelling her to arbitrate her claims must be set aside on the ground of unconscionability and lack of mutuality of remedy. The Northcom language she relies on is dictum. This Court rejected that dictum regarding the doctrine of unconscionability and mutuality of remedy, in Ex parte McNaughton,728 So.2d 592 (Ala. 1998). See also Ex parte Napier,723 So.2d 49 (Ala. 1998), and American General Finance, Inc.v. Manley, 729 So.2d 260 (Ala. 1998).
Mrs. Perry's claim of fraud in the inducement of the arbitration clause in particular appears to be an ad hoc argument intended to avoid the arbitration agreement. In reality, Mrs. Perry challenges the contract as a whole, not just the arbitration agreement; therefore, arbitration is the appropriate forum for resolving her challenge. Mrs. Perry signed the contract, and her allegations that she was rushed through the purchase process are insufficient to prevent the conclusion that her signature was not induced by fraud in the inducement of the contract in general. More importantly, and analyzing the case under the rationale of Prima Paint, one must conclude that her allegations are insufficient to prevent the conclusion that her signature was not induced by fraud in the inducement of the arbitration clause in particular.
Mrs. Perry also claims that the title of the arbitration provision in the contract, "Alternative Dispute Resolution," was a misleading characterization. We disagree. Binding arbitration is a form of alternative dispute resolution. In fact, the phrase "Alternative Dispute Resolution" actually provides more information to the reader than the word "arbitration." It lets the reader know that if a dispute arises, the contract may require an alternative means of resolving that dispute. Nevertheless, it was Mrs. Perry's responsibility to read the entire contract before she signed it, not just the subtitles of the paragraphs or provisions. We cannot accept the proposition that the phrase "Alternative Dispute Resolution" somehow fraudulently led Mrs. Perry not to read the contract.
Mrs. Perry has shown no abuse of discretion on the part of the Jefferson Circuit Court. The trial judge correctly granted the motions of Hyundai and Jim Burke Motors to compel arbitration
WRIT DENIED.
Maddox and See, JJ., concur.
Houston and Brown, JJ., concur in the result.
Cook, Lyons, and Johnstone, JJ., dissent.
[1] We have already determined, supra, that, as a matter of law, the trial court correctly determined that Mrs. Perry's allegation of fraud in the inducement of the arbitration clause, in particular, was invalid. See also Jones v. Merrill Lynch, Pierce,Fenner Smith, Inc., supra, regarding ad hoc allegations of fraud in the inducement of an arbitration agreement.
[2] We use the term "First Options arbitrability" to avoid the confusion we believe occurred in Allstar when it dealt with this same issue. Today, we clarify what was meant by the Supreme Court's use of the term "arbitrability" in First Options.
[3] The evidentiary standard of "clear and unmistakable evidence" was adopted by the Supreme Court in First Options as the standard for determining whether the parties had agreed to arbitrate the "First Options arbitrability" question. The Supreme Court explained why: "A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." First Options, 514 U.S. at 945
(quoted in United Brotherhood of Carpenters Joiners of America,Local No. 1780 v. Desert Place, Inc., 94 F.3d 1308, 1311 (9th Cir. 1996)).
[4] The Three Valleys court, in a footnote to the sentence quoted above, made it clear that Prima Paint did not deal with the question addressed by Three Valleys:
 "Shearson argues that this holding has been rejected by the majority in Prima Paint. Shearson notes that Justice Black in his Prima Paint dissent made a similar argument with respect to the defense of fraudulent inducement, and it was rejected by the majority. 388 U.S. at 407, 87 S.Ct. at 1808. (Black, J., dissenting). But here Shearson seeks to apply Prima Paint one step further to a case where the plaintiffs contend that the parties have given the arbitrator no authority to hear any dispute. The Prima Paint majority did not address this question."
Three Valleys, 925 F.2d at 1141, n. 4.
[5] The confusion of the Allstar Court is understandable when one considers the terminology used. In First Options, the Supreme Court uses the term "arbitrability" in a very narrow context. Taking the term at face value and outside of that context, it would seem that the Supreme Court in First Options may have overruled Prima Paint. However, to obtain the correct perspective, we must look at the term in light of the narrow context of First Options. 514 U.S. at 942. Only then can we understand the reversal of the presumption in favor of arbitration that the Supreme Court imposed in First Options. It is the dilemma of the box within a box or, in the case of arbitration, the authority as to the decision as to the authority to make the decision.
The First Options presumption against arbitration and its accompanying requirement that there be "clear and unmistakable evidence" of an agreement to arbitrate arbitrability apply only in the context of a contract provision giving the decision of "arbitrability" to an arbitrator, a decision traditionally reserved to the courts. Such a presumption applies only to the narrow context addressed in First Options, a context that is not present in Mrs. Perry's case.
[6] This Court clarified Allstar to some extent in Investment Management Research, Inc, v. Hamilton, 727 So.2d 71 (Ala. 1999):
 "In First Options, the only document containing an arbitration provision was the one signed by MKI; the documents signed by the Kaplans did not contain an arbitration clause. Under the facts in First Options, where the contract between the parties did not address or decide who would decide the question of arbitrability, the dispute as to whether the Kaplans' individual claims were subject to arbitration was one for a court to decide.
 "The facts of this present case, however, place it within the application of the principles announced in Prima Paint. Hamilton did not assert a claim of fraud in the inducement as to the arbitration clause; rather, Hamilton challenged the IMR customer agreement as having been fraudulently induced. In other words, Hamilton did not contend that the execution of the arbitration provision itself (i.e., apart from the execution of the other provisions of the customer agreement) was induced by fraud."
727 So.2d at 77-78.
[7] The United States Court of Appeals for the Eleventh Circuit has adopted the Fifth Circuit's test for determining this question:
 "In Chastain v. Robinson-Humphrey Co., [957 F.2d 851
(11th Cir. 1992)], this Court applied the former Fifth Circuit's two-component test for determining whether the arbitrability question should first be litigated before the district court. The party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer `some evidence' to substantiate the denial. Chastain, 957 F.2d at 854 (citing T R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980))."
Wheat, First Securities, Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993).