784 So.2d 1022 (2000)
Helen LEE d/b/a American Quality Service a/k/a American Quality Service of Tennessee
v.
YES OF RUSSELLVILLE, INC., et al.
1991407.
Supreme Court of Alabama.
November 17, 2000.
*1023 Oscar M. Price III and William D. Jones III of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham; and R. Eric Summerford, Sr., of Summerford & Stoner, Decatur, for appellant.
Phil D. Mitchell and Bingham D. Edwards of Edwards, Mitchell & Reeves, Decatur, for appellees.
MADDOX, Justice.
The Franklin Circuit Court denied the plaintiff Helen Lee's motion to stay proceedings pending mediation/arbitration. She appealed. For the reasons discussed below, we affirm, but we set out some of the principles of law that should guide the trial court in the further proceedings in this case.

I.
The trial court's order denying Lee's motion to compel mediation/arbitration made no specific findings of fact. However, it appears from the materials before this Court that YES of Russellville, Inc., and/or Narendra Sheth owned property in Franklin County upon which it/he/they wished to construct a Holiday Inn Express hotel. Sheth negotiated with Joseph Hemingway *1024 to have the hotel built. Lee claims that documents in the record form a contract between her and the defendants (YES of Russellville, Inc., and Narendra Sheth). The first document is in the form of a letter from "American Quality Service" to Sheth proposing certain terms for the contract for constructing the hotel. Sheth signed that letter/proposal as "OWNER OR OWNER/AGENT." Hemingway signed the letter/proposal as "Const. Director (V.P.)" for "American Quality Service."
The second document is entitled "NOTICE TO PROCEED." It states: "Notice to proceed is hereby given to American Quality Service to proceed with construction of the following project.... AMERICAN QUALITY SERVICE, hereafter, shall be known as Owner's Authorized Contractor on the aforementioned project and Narenda [sic] Sheth shall be known, hereafter, as Owner of said project." Hemingway appears to have signed as "(authorized agent)" under the words "AMERICAN QUALITY SERVICE," and Sheth appears to have signed as "(owner and/or owner agent)" under the word "OWNER."
The third document, which is titled "AIA Document A201-1997," is incorporated by the letter/proposal. The AIA document contains the following introductory passage concerning dispute resolution:
"DISPUTE RESOLUTIONMEDITION AND ARBITRATION. This document contains provisions for mediation and arbitration of claims and disputes. Mediation is a non-binding process, but is mandatory under the terms of this document. Arbitration is mandatory under the terms of this document and binding in most states and under the Federal Arbitration Act. In a minority of states, arbitration provisions relating to future disputes are not enforceable but the parties may agree to arbitrate after the dispute arises. Even in those states, under certain conditions (for example, in a transaction involving interstate commerce), arbitration provisions may be enforceable under the Federal Arbitration Act."
The document includes further provisions requiring that "any claim arising out of or related to the Contract" be submitted to mediation "as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." The document also provides that "[c]laims not resolved by mediation shall be decided by arbitration."
Construction commenced, and apparently a substantial amount of work was completed before a dispute over payment arose. On October 28, 1999, "Joe Hemingway d/b/a American Quality Service" sued YES and Sheth, alleging that he had performed work under the contract from October 1998 to September 1999 but that YES and Sheth had failed to pay him for the work. Hemingway asserted claims of breach of contract and money due on open account, and he sought enforcement of a lien he had filed on the Holiday Inn property and its improvements.
YES and Sheth answered and also moved to consolidate Hemingway's case with a case YES and Sheth had filed against Hemingway. The record does not reflect that those cases were ever consolidated.
YES and Sheth moved for a summary judgment, arguing that Hemingway was not licensed to do business as a general contractor. See § 34-8-1 et seq., Ala. Code 1975. YES and Sheth argued that, therefore, the construction contract was null and void, citing White v. Miller, 718 So.2d 88 (Ala.Civ.App.1998). While that motion was pending, Helen Lee moved to amend the complaint to substitute herself as plaintiff. She contended that American *1025 Quality Service was a trade name under which she operated a sole proprietorship and that Hemingway had acted as her agent in dealing with YES and Sheth. The trial court granted Lee's motion and substituted "Helen Lee d/b/a American Quality Service a/k/a American Quality Service of Tennessee" as the plaintiff. The court denied the defendants' motion for a summary judgment.
Lee then moved to stay the proceedings pending mediation and arbitration, citing the dispute-resolution provisions in the AIA document discussed above. YES and Sheth opposed that motion, arguing that they did not have a contract with Lee and that, therefore, they could not be required to submit to arbitration. In addition to their argument that the contract was void, as discussed above, they argued that, if the contract was not void, it was a contract between them and Hemingway. They argued that Hemingway had signed the contract documents as an agent of and as "Const. Director (V.P.)" of "American Quality Service." Because no legal entity named "American Quality Service" exists, they argued, Hemingway, in his individual capacity, was the party with whom they had contracted, if the contract was not void. Thus, they argued, they had no contractual relationship with Lee.
The trial judge denied Lee's motion to stay the proceedings. He did not, however, make any findings of fact or explain his reasons for denying the motion. Lee appeals from the order denying her motion.

II.
A trial court's denial of a motion to stay proceedings pending arbitration is reviewable by direct appeal. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (1990).[1] Our review of that decision is de novo. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).
Lee argues that the trial court erred in denying her motion because, she says, the contract between her and the defendants clearly provides that disputes relating to the contract must be resolved through mediation and arbitration. The defendants do not appear to dispute that the claims made in this case are related to the alleged contract. They do argue, however, that the trial court correctly denied the motion to arbitrate because there is no contract or, if there is a contract, because Lee is not a party to the contract.
It is well settled that Alabama law disfavors predispute agreements to submit disputes to binding arbitration. Indeed, the Code of Alabama of 1975 specifically prohibits the enforcement of predispute agreements to arbitrate. § 8-1-41(3), Ala. Code 1975. However, Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), provides that predispute arbitration agreements in contracts involving interstate commerce are binding.[2] Further, the United States Supreme Court has held:
"Section 2 of the FAA provides that written arbitration agreements `shall be valid, irrevocable, and enforceable, save *1026 upon such grounds as exist at law or in equity for revocation of any contract.' 9 U.S.C. § 2. Repeating our observation in [Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)], the text of § 2 declares that state law may be applied `if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' 482 U.S., at 492, n. 9, 107 S.Ct. 2520."
Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (emphasis added in Casarotto omitted here). Similarly, the Supreme Court has held that an arbitration provision in a contract must be reviewed by a state court "on the same footing as [the] contract's other terms." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 275, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (internal quotation marks omitted). The Supreme Court wrote in Dobson:
"[Section] 2 gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause `upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2 [emphasis added in Dobson]. What states may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal `footing,' directly contrary to the Act's language and Congress' intent."
Dobson, 513 U.S. at 281, 115 S.Ct. 834.
Decisions of the Supreme Court of the United States, of course, are binding on this Court. Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). Thus, this Court and all the other courts of this State are required faithfully to follow and to apply the decisions of that Court. With regard to arbitration provisions, the Supreme Court has made it clear that they may be denied application only for reasons that could make other provisions of a contract inapplicable.
In Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613 (Ala.1994), this Court considered the question whether arbitration may be required where a document alleged to form a contract between the parties includes an arbitration clause but where the existence of a contract is in dispute. After reviewing a number of authorities, this Court concluded that a court must determine the threshold question whether a contract exists. See also Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454 (Ala.2000) ("[An attempt] to avoid or to rescind a contract is subject to arbitration[,] but a challenge to the very existence of a contract is not subject to arbitration."); Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000) (citing Shearson Lehman); NationsBanc Invs., Inc. v. Paramore, 736 So.2d 589, 594 (Ala.1999) ("The trial court must determine if the contract ever existed.... Only after making this determination could the trial court properly deal with the issue of arbitration."); compare Ex parte Perry, 744 So.2d 859 (Ala.1999) (holding that a claim of fraudulent inducement to enter the contract would be resolved by an arbitrator).
Whether there is a contract at all, under the facts of this case, depends in *1027 large part on application of the law of agency. An agent acting with actual or apparent authority who enters a contract on behalf of a principal binds the principal but not himself. Pate v. T-Square, Inc., 545 So.2d 70 (Ala.Civ.App.1989); Davis v. Childers, 381 So.2d 200 (Ala.Civ.App.1979). However, if an agent acting within his authority enters a contract on behalf of an undisclosed principal, the agent is liable on the contract (B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979); Pate, supra; and Davis, supra); the undisclosed principal is also liable. Woods v. Commercial Contractors, Inc., 384 So.2d 1076 (Ala. 1980); Davis, supra; Restatement (Second) of Agency, § 186 (1958).
The defendants argue that the parol evidence rule bars admission of any evidence showing that the words "American Quality Service" referred to Lee. Thus, they argue, no evidence may be admitted to show that Hemingway was Lee's agent, and because Hemingway was not licensed as a general contractor in Alabama, they argue that the contract was void and the proceedings should not have been stayed.
The defendants rely on Hunter v. Austin Co., 336 So.2d 203 (Ala.Civ.App.1976), in which the Court of Civil Appeals quoted with approval from Richmond Locomotive & Machine Works v. Moragne, 119 Ala. 80, 24 So. 834 (1898). In Richmond Locomotive, this Court wrote:
"[I]f a principal is not disclosed ..., and the party signing describes himself as agent, trustee, or the like, without more, it is the obligation alone of the party whose name is set to the paper, the superadded word or words being mere descriptio personae to be disregarded as surplusage, and evidence cannot be received to show that he was, in fact, the agent or trustee or the like of an undisclosed principal, cestui que trust or the like, and that the obligation was that of such other person."
119 Ala. at 83, 24 So. at 834. The application of the parol evidence rule in agency cases involving undisclosed principals appears to conflict with the principles stated in Restatement (Second) of Agency, § 186, cmt. c:
"The [undisclosed] principal becomes a party to the transaction only if it is proved that the agent intended to act upon his account.... The proof must be that the one making the contract was acting as agent in a matter entrusted to him as agent. For the purpose of proving this, parol evidence is admissible, even though the contract is in writing."
(Emphasis added.) In addition, there appears to be a large body of caselaw from other jurisdictions holding that parol evidence is admissible to prove that one who signed a contract did so on behalf of an undisclosed principal. See, e.g., Ford v. Williams, 62 U.S. (21 How.) 287, 289, 16 L.Ed. 36 (1858) ("[N]otwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction."); Garland v. Fleischmann, 831 P.2d 107 (Utah 1992); IX Wigmore on Evidence § 2438 (Chadbourne rev.1981).
Despite the appearance of a conflict with the Restatement and with the decisions of other jurisdictions, this Court reaffirmed the Richmond Locomotive rule in Rush v. Thomas Duckett Constr. Co., 380 So.2d 762 (Ala.1979), many years after the American Law Institute had adopted the Restatement (Second) of Agency in 1957. The parties do not directly address this issue in their appellate briefs, and, therefore, we *1028 will not depart from Richmond Locomotive and Rush today.
In Hunter, which applied the Richmond Locomotive rule, a leasing contract was signed by "Clarence Hunter, T/A Hunter Cricket Farm By Clarence Hunter, Lessor." 336 So.2d at 204. In litigation that ensued, Clarence Hunter and his wife argued that by signing the contract as he did he was indicating that he was signing as an agent for his wife, who did business under the name Hunter Cricket Farm. The Court of Civil Appeals held that because the letters "T/A," which presumably were an abbreviation for "trading as," had no meaning in the law, there was no ambiguity in the contract and Hunter was liable under the contract, but his wife was not.
In Hunter, Hunter indicated only that he was signing "T/A," or "trading as" a trade name. In contrast, Hemingway signed the letter/proposal as "Const. Director (V.P.)" for "American Quality Service." He signed the notice to proceed as "(authorized agent)" under the words "AMERICAN QUALITY SERVICE." Thus, Hemingway did not "[describe] himself as agent, trustee, or the like, without more," 119 Ala. at 83, 24 So. at 834 (emphasis added), as Hunter did in the Hunter case. Instead, he identified himself as an agent of American Quality Service. Accordingly, we conclude that the contract is ambiguous and that parol evidence would be admissible, in addition to the contract documents themselves,[3] to show that Hemingway was acting as Lee's agent.
As this Court has held, "the existence and scope of an agency relationship are questions of fact to be determined by the jury." Standard Plan, Inc. v. Tucker, 582 So.2d 1024, 1029 (Ala.1991). Whether the agency existed is, we conclude, a question for a jury to decide.
We emphasize that the question of agency is only a threshold issue. If a jury determines that an agency relationship did not exist, then the contract would be void because Hemingway was not a licensed general contractor. White v. Miller, 718 So.2d 88, 89 (Ala.Civ.App.1998) ("It is well settled that `[e]xpress or implied contracts entered into by an unlicensed general contractor are null and void because they violate public policy.'"). However, if the jury determines that the agency relationship did exist, and thus that Lee is a valid party to the contract, the dispute must proceed to arbitration.
The next question we address is whether Lee substantially invoked the litigation process and thereby waived her right to compel mediation and arbitration. A party may waive the right to arbitrate by substantially invoking the litigation process, if the party opposing arbitration is substantially prejudiced as a result. Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995). For a court to find that a party substantially invoked the litigation process, his actions must "bespeak[] an intention to abandon the right in favor of the judicial process." Id. at 899. A party's failure to seek arbitration in an initial pleading is not sufficient, by itself, for a court to conclude that the party waived his right to compel arbitration. See Ex parte McKinney, 515 So.2d 693 (Ala.1987). The determination of a waiver must be made based on the particular facts of each case. Companion Life, supra.
"[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration." Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102 (Ala. 1997). A party seeking to prove a waiver *1029 of a right to arbitrate carries a heavy burden, and the courts will not lightly infer a waiver of the right to compel arbitration. Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).
Hemingway filed the initial complaint on October 28, 1999. The defendants answered on November 18, 1999, and then moved for a summary judgment on December 8, 1999. On January 21, 2000, Lee moved to stay pending mediation/arbitration. Three days later, Lee filed the amended complaint.
Approximately three months passed between the filing of the initial complaint and Lee's filing her motion to compel arbitration. Lee took no action other than filing the initial complaint (according to her argument, through Hemingway), moving for the stay, and filing her amended complaint. From the materials before us, it does not appear that a substantial amount of discovery occurred. In light of those facts, and in light of the strong policy against finding a waiver, we cannot conclude that Lee's actions show an intention to forsake arbitration in favor of the litigation process. Therefore, we cannot accept the defendants' arguments that we should hold that Lee waived her right to compel arbitration. Compare Morrison Restaurants, Inc. v. Homestead Village, 710 So.2d 905 (Ala.1998) (party waived right to compel arbitration by waiting until after trial court had ruled adversely to it by granting the other party's motion for a summary judgment). Accordingly, if the jury finds that in fact Lee and Hemingway had the agency relationship Lee claims, we see no impediment to proceeding to arbitration.
For the foregoing reasons, and based on the record before us, we affirm the order denying Lee's motion to stay proceedings pending mediation/arbitration.
AFFIRMED.
HOOPER, C.J., and HOUSTON, COOK, and BROWN, JJ., concur.
LYONS, JOHNSTONE, and ENGLAND, JJ., dissent.
SEE, J., recuses himself.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. Whatever rights Lee may claim under the contractmonetary rights, arbitration rights, or other rightsdepend entirely on her claim that Hemingway was her agent. If he was her agent, then she, acting by and through him as her agent, chose and invoked court litigation instead of arbitration and thereby waived any arbitration right by filing and prosecuting the lawsuit. If Hemingway was Lee's agent, then the lawsuit to collect from the defendants is her own lawsuit, and Hemingway's litigation is Lee's litigation. Indeed, in her verified "Substitution of Parties and Amended and Restated Complaint," she swears that she authorized Hemingway to file the lawsuit. (C. 122.)
I further disagree with the main opinion insofar as the first sentence of Part II can be interpreted as meaning that the denial of a motion to compel mediation alone pursuant to a contract requiring only mediation would be reviewable by appeal. This language is overbroad and unnecessary to the decision in this case, which addresses a contract requiring both mediation and arbitration conjunctively.
LYONS and ENGLAND, JJ., concur.
NOTES
[1] The contract at issue required that the parties first submit their dispute to mediation. Should the parties fail to resolve all their disputes in mediation, the contract required them to proceed to binding arbitration. Although this is not solely an arbitration provision, then, we nonetheless conclude that our caselaw stating the method of review to be applied in cases involving arbitration clauses is applicable, because the contract ultimately requires the parties to submit to binding arbitration to resolve their dispute if mediation fails to resolve it. We note that we have previously reached the same conclusion in other cases. See, e.g., Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala.2000).
[2] It appears undisputed that this case involves interstate commerce.
[3] Lee argues that the documents show plainly that Hemingway was acting as her agent.