These appeals arise out of proceedings in the Franklin Circuit Court after a prior appeal of this case. See Lee v. YES of Russellville, Inc.,784 So.2d 1022 (Ala. 2000) ("Lee I"), in which this Court affirmed the trial court's order denying Helen Lee's motion to compel arbitration and set out some principles of law to guide the trial court in further proceedings in the case. The appeal in Lee I was from the denial of Lee's motion to compel arbitration and to stay proceedings pending mediation/arbitration of a dispute between American Quality Service a/k/a American Quality Service of Tennessee ("AQS"), YES of Russellville, Inc. ("YES"), Narendra Sheth, and Community Spirit Bank ("the Bank") (YES, Sheth, and the Bank are hereinafter referred to collectively as "the Owners"). One of the issues to be decided in the further proceedings was the nature of the relationship between AQS, Helen Lee, and Joseph Hemingway. This appeal is from a judgment entered against Lee and Hemingway and in favor of the Owners. We affirm.
Most of the facts underlying this dispute were set forth in Lee I. One action began on October 14, 1999, when a complaint was filed by YES and Sheth against "Joseph Hemingway, individually, and d/b/a American Quality Service" (case no. CV-99-224). The complaint sought damages under theories of breach of contract to construct a Holiday Inn Express hotel and slander of title. On October 28, 1999, a complaint was filed by "Joseph Hemingway, d/b/a American Quality Service," against YES and Sheth "to establish a lien" on property owned by YES and/or Sheth (case no. CV-99-240). That complaint also sought to recover $852,000 "for work and improvements done on the property of the defendant[s]," in counts for breach of contract and money "due on open account."
The Bank intervened on January 25, 2000. Its interest in the dispute arises out of a mortgage it holds, securing the debt incurred by YES for construction of the hotel. As Lee and Hemingway explain it:
 "Pursuant to [Ala. Code 1975,] § 35-11-211(a), a mechanic's lien on property *Page 252 
and improvements has priority over all other liens, mortgages or encumbrances created after the builder begins work on the improvements. [AQS] began work on the hotel construction project in October 1998. Sheth and/or YES of Russellville gave Community Spirit Bank a mortgage on the property in December 1998. Accordingly, Lee's mechanic's lien has priority over the bank's mortgage unless [the lien] is invalid — hence the bank's strenuous contentions that Lee is not a party to the construction contract and that Hemingway was an unlicensed general contractor and has no remedies against Sheth or YES of Russellville."
Brief of Appellants, at 5 n. 2. The actions were treated as though they were consolidated.
YES and Sheth filed a joint motion for a summary judgment, arguing that Hemingway had failed to comply with the licensing requirements of Ala. Code 1975, § 34-8-1 et seq., relating to general contractors, and, consequently, that the construction contract was unenforceable. "While that motion was pending, Helen Lee moved to amend the complaint to substitute herself as plaintiff. She contended that [AQS] was a trade name under which she operated a sole proprietorship and that Hemingway had acted as her agent in dealing with YES and Sheth." Lee I, 784 So.2d at 1024-25 (emphasis added). It is undisputed that at all relevant times, Lee possessed a valid general contractor's license. The trial court granted Lee's motion to substitute herself as plaintiff and denied the summary-judgment motion. However, the trial court denied Lee's motion to stay the proceedings pending mediation/arbitration; hence, the first appeal.
In affirming the order denying Lee's motion to stay the proceedings pending mediation/arbitration, we said:
 "We emphasize that the question of agency is only a threshold issue. If a jury determines that an agency relationship did not exist, then the contract would be void because Hemingway was not a licensed general contractor. White v. Miller, 718 So.2d 88, 89
(Ala.Civ.App. 1998) (`It is well settled that "[e]xpress or implied contracts entered into by an unlicensed general contractor are null and void because they violate public policy."'). However, if the jury determines that the agency relationship did exist, and thus that Lee is a valid party to the contract, the dispute must proceed to arbitration."
Lee I, 784 So.2d at 1028.
After the first appeal, the trial court made factual determinations involving the relationship of AQS with Lee and Hemingway, based on evidence presented ore tenus. The trial court found the testimony of Lee and Hemingway to be incredible. On the basis of the "right-of-control test," applied in Thrash v. Credit Acceptance Corp., 821 So.2d 968, 972
(Ala. 2001), the trial court found "that Joseph Hemingway acted as the `principal' and [was] in fact that individual acting as the general contractor responsible for the construction of the hotel in question in Russellville, Alabama." Consequently, the court held that the contract between YES/Sheth and AQS was void. The court entered a judgment in favor of the Owners and made the judgment final, pursuant to Ala.R.Civ.P. 54(b).
Lee and Hemingway filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. From the denial of that motion, they appealed.[1] On *Page 253 
appeal, Lee and Hemingway contend that the trial court erred to reversal in applying the right-of-control test and in finding that "Lee exercised insufficient control over the actions of Hemingway." Brief of Appellants, at 20. Thus, this appeal presents two issues, one of law and one of fact, namely, (1) whether the trial court applied the correct test to those facts, and, if so, (2) whether the evidence supports its findings.
 I. The Test
In Thrash, this Court said:
 "`Agency is generally a question of fact to be determined by the trier of fact. . . . The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract. . . .'
 "(Emphasis added [in Thrash].) The right-of-control test requires that the right be reserved, not that the right be actually exercised."
821 So.2d at 972.
Here, the trial court noted a peculiarity of this dispute, stating:
 "Ordinarily, the principal is attempting to disavow any relationship with an alleged agent in light of a third party's attempts to tag the principal with the consequences of some action of the agent. It is undisputed that the case at bar cannot be classified as `ordinary.' Here, the third parties (i.e., YES and/or Community Spirit Bank) assert the true `facts of the relationship' reflect that Joseph Hemingway was doing business for himself and asserted himself as the entity known as AQS."
(Emphasis added.)
Lee and Hemingway argue that the issue is whether Lee authorized Hemingway to execute the contract with YES/Sheth. More specifically, they contend:
 "The `right-of-control' test, with its inquiry into the degree of control that the alleged principal exercised over the alleged agent, is not appropriate in the context of the present case. In the present case, the principal, Helen Lee, is not trying to avoid her responsibilities as Joe Hemingway's principal. She admits the fact of agency. It is . . . Sheth and YES of Russellville who are trying to avoid their contractual obligations to Lee. The proper inquiry in the present case is simply whether Lee authorized Hemingway to make the contract on her behalf. See Restatement (Second) of Agency § 292 (1958). She testified that she did and ratified the contract in open court. The inquiry should have ended there."
Brief of Appellants, at 18-19 (emphasis added).
This contention, however, merely assumes away the issue. The dispositive issue is, as the trial court properly identified it, whether Lee is the principal. This is not the "ordinary" agency case in which the identity of the principal is undisputed. Here, the identity of the principal is the issue. The question, in other words, is which individual — Hemingway or Lee — was, in reality, doing business as AQS. If that individual was Hemingway, then whether Lee declines to disclaim, or seeks to ratify, his actions is immaterial.
Indeed, "`[h]ow the parties characterize the relationship is of no consequence; it is the facts of the relationship that control.'" Thrash, 821 So.2d at 972 *Page 254 
(quoting Martin v. Goodies Distrib., 695 So.2d 1175,1177 (Ala. 1997)). In a case such as this one, the right-of-control test is useful. It is undisputed that AQS is a sole proprietorship — "a business in which one person owns all the assets [and] owes all the liabilities." Black's Law Dictionary 1398 (7th ed. 1999). It almost goes without saying that "the owner ofa business is a principal." 1 Restatement (Second) ofAgency § 1 comt. d (1958) (emphasis added).
The right-of-control test identifies primary and secondary actors and locates the source of authority and responsibility. In other words, the test isolates some indicia of ownership material to the resolution of this case. This is particularly true here, in view of the fact that the trial court found the oral testimony of the purported principal and agent to be incredible. In short, we conclude that the trial court did not err in applying the right-of-control test.
 II. The Findings
It is well settled that "[t]he judgment of a trial court based on ore tenus evidence is presumed correct, and its findings `will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence.'" Anderson v. Lee, 621 So.2d 1305,1307 (Ala. 1993) (quoting McCoy v. McCoy, 549 So.2d 53,57 (Ala. 1989)). The trial court found that Hemingway, not Lee, was "the entity known as AQS." We cannot conclude that that finding was "palpably wrong, manifestly unjust, or without supporting evidence."
The trial court stated:
 "It is the finding of the court that various names have been utilized in the documentation submitted as evidence: (1) Helen Lee d/b/a American Quality Service; (2) Joe Hemingway d/b/a American Quality Service; (3) American Quality Service by Joseph Hemingway, Construction Director (V.P.); (4) American Quality Service by Joseph Hemingway, authorized agent; and (5) Joseph Hemingway, General Contractor for [Narendra] Sheth. . . . It is the . . . finding of the court that the entity identified as American Quality Service of Tennessee was granted a General Contractor's (GC) license #21031 in 1995, which was renewed through December 1999. The application for that license was signed by Helen Lee, as the sole owner of that entity. It is undisputed that the application executed by Helen Lee included the financial resources of Ms. Lee, but reflected the construction experience of Joseph Hemingway. . . .
 "It is the finding of the court that Joseph Hemingway had the construction experience to support an application as a general contractor. It is undisputed that he has such work experience in various areas of construction including, but not limited to, electrical and plumbing. It is the determination of this court that Joseph Hemingway directed all phases of the construction of the Russellville [hotel] project. Helen Lee's participation, exclusive of financial backing, was limited to fielding telephone calls and assisting with paperwork. It is the finding of this court that Joseph Hemingway's testimony is not credible and the documentary evidence supports the position that at the time of the negotiations of the contracts to construct the hotel, and throughout the period of construction, Joseph Hemingway acted independent of Helen Lee."
(Emphasis added.) The record supports those findings.
In addition to the evidence cited above, the record contains a number of "lien waivers," executed by Hemingway. One such *Page 255 
document, executed on August 20, 1999, states, in pertinent part:
 "In consideration of a check in the amount of $14,455 . . . the undersigned general contractor does hereby waive, release and quitclaim, to the extent only of the aforesaid amount, all rights that he may have to Lien, pursuant to the laws of the State of Alabama, for labor furnished in construction and improvements to, or upon, the following described property:
 "Holiday Inn Express and Suites 13770 Hwy 43 Russellville, AL 35653
". . . .
"/s/ Joseph Hemingway
"Joseph Hemingway d/b/a American Quality Service"
(Emphasis added.) A second document, identical in all material respects, except as to the amount, was executed on August 26, 1999.
Moreover, the hotel construction project was operated through two bank accounts opened by Hemingway. The accounts were opened in the name of "Joseph E. Hemingway Construction Account," or simply, "Joseph E. Hemingway." All the money received from the hotel construction project was deposited in one of the two accounts. Lee was not a signatory on either account, and she received no money from the accounts. Although Hemingway wrote checks to himself from the accounts, he never received a "paycheck" from Lee or from AQS. These facts and similar documents and testimony, with which the record is replete, are indicia of Hemingway'sownership of AQS.
Not to be overlooked is the fact that, when the complaint was filed initiating case no. CV-99-240, it was filed by "Joe Hemingway d/b/a American Quality Service." Count One of the complaint stated in part:
 "1. Joe Hemingway d/b/a American Quality Service brings this action against the defendants, YES of Russellville, Inc. and [Narendra] Sheth, an individual, for the purpose of establishing a lien upon the property hereinafter described in `Exhibit A' attached hereto and incorporated herein as if fully set forth.
"2. The plaintiff is a sole proprietorship. . . .
 "3. The plaintiff is engaged in, among other things, the business of providing labor and material for the construction and improvement of commercial projects.
 "4. The plaintiff contracted with the defendant, YES of Russellville, Inc., and [Narendra] Sheth, an individual, for construction of the Holiday Inn Express and Suites located on Highway 43, Russellville, Franklin County, Alabama. . . .
 "5. The plaintiff, Joe Hemingway d/b/a American Quality Service performed work under the contract in accordance with the instructions and specifications of the said YES of Russellville, Inc. and [Narendra] Sheth."
The complaint was signed: "Joe Hemingway d/b/a American Quality Service."
That complaint was filed on October 28, 1999. However, it was not until after December 8, 1999, when YES and Sheth filed their summary-judgment motion, raising the issue of noncompliance with § 34-8-1 et seq., that Lee appeared in the case to assert that Hemingway was merely acting as her agent in contracting for the construction of the hotel. In short, the record amply supports the finding that Joseph Hemingway was doing business as American Quality Service in the construction of the hotel. *Page 256 
For the first time, Lee and Hemingway argue in this Court:
 "It is not necessary to determine the outcome of this case on the technical question of which person — Lee or Hemingway — was the `real' principal. . . . Hemingway is . . . `connected with the [licensed general contractor] as an officer, partner or employee,' and this Court should hold that his construction activities are authorized pursuant to the license issued to [AQS]."
Appellants' Brief, at 29, 35-36 (quoting Cooper v. Johnston, 283 Ala. 565,569, 219 So.2d 392, 395 (1969) (emphasis added)). Essentially, they now contend that Hemingway is sufficiently "connected with the [licensed general contractor] as an officer, partner or employee," to satisfy statutory law and caselaw, regardless of his "technical" status. Thus, for the first time on appeal, they suggest that the nature of the entity, itself, might affect its right to enforce the contract.
Throughout these proceedings, Lee and Hemingway have taken the position that AQS is a sole proprietorship, and have cast their arguments only in terms of the principal/agent relationship. At no time have they asserted that the actions of Hemingway might satisfy the statutory scheme under some alternative organizational structure. They have persisted in the claim that the contract is valid, solely because Lee, as principal, authorized Hemingway, as agent, to execute it.
Indeed, since this Court decided the first appeal in this case the parties have entertained markedly differing views of the issues to be tried. The position adopted by Lee and Hemingway is, in part, an outgrowth of their opinion of the scope of the opinion in Lee I. That opinion was in essentially two parts. "Part I" stated: "If a jury determines that an agency relationship did not exist, then the contract would be void because Hemingway was not a licensed general contractor."Lee I, 784 So.2d at 1028. "Part II" stated: "However, if the jury determines that the agency relationship did exist, and thus that Lee is a valid party to the contract, the dispute must proceed to arbitration."Id. The Owners presented their case in the context of Part I, attempting to prove that Hemingway, not Lee, was doing business as AQS, to procure a holding that the contract was void.
Lee and Hemingway, on the other hand, presented their case in the context of Part II, arguing that the only triable issue was whether Lee had authorized Hemingway to contract with the Owners. For example, in the hearing on their post-judgment motion, Lee and Hemingway argued that the trial court's judgment had exceeded the scope of the opinion in Lee I, which they characterized, as "exceedingly narrow." The inquiry should, they contended, have been limited to the mere question "whether or not Helen Lee gave Joseph Hemingway the authority to sign that contract at that time in that manner on behalf of American Quality Service." Consequently, it was not until the hearing on the posttrial motion that they conceded that "maybe it's what this organization is that [the] argument arises about." (Emphasis added.) Even then, they did not argue, as they do here, that Hemingway is sufficiently "connected with the [licensed general contractor] as an officer, partner or employee," to satisfy statutory law and caselaw, regardless of his "technical" status.
Lee and Hemingway have read the opinion in Lee I too narrowly. Part I of that opinion clearly signaled that one issue would be whether Hemingway was AQS. Only if he was would the contract be void. As a result, their argument that Hemingway's *Page 257 
status does not matter comes too late.
It is well settled that this Court will not address issues raised for the first time on appeal. Byrd v. Lamar, 846 So.2d 334, 341 (Ala. 2002);Neal v. Neal, 856 So.2d 766, 778 (Ala. 2002). The trial court will not be placed in error on the basis of issues never presented to it. Grayson v.Hanson, 843 So.2d 146, 149 (Ala. 2002); Beavers v. County of Walker,645 So.2d 1365, 1372 (Ala. 1994). For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MOORE, C.J., and LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
HOUSTON, J., concurs in the result.
[1] Case no. 1011691 represents the appeal from CV-99-224. Case no. 1011692 represents the appeal from CV-99-240.