[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 159 
Lloyd Noland Hospital ("the Hospital") appeals from the denial of its motion for a new trial, following a judgment entered on *Page 160 
a jury verdict in favor of Janann Durham, in Durham's medical-malpractice action against the Hospital and the denial of its motion to alter or amend the judgment as to the payment of future damages. We affirm.
On May 29, 1996, Durham was admitted to the Hospital on the orders of Dr. John Edwards, her gynecologist and primary surgeon, to undergo two surgical procedures during one operation: (1) a "total vaginal hysterectomy and anterior colporrhaphy" ("the first procedure"), and (2) a "RAZ retropubic suspension" ("the second procedure"). Her specific admission orders were handwritten by Dr. George McGrady, Dr. Edwards's partner. Dr. McGrady and Dr. Edwards were partners in the "Henderson Walton Obstetrical Gynecological Group" ("the Group"), which, pursuant to a contract with the Hospital, provided gynecological care and treatment for patients at the Hospital as "consultants."
The admission orders did not prescribe a preoperative antibiotic. The nursing staff of the Hospital included the admission orders with Durham's chart but did not place with her chart any supplementary, or "standing," orders. Consequently, Durham received no preoperative antibiotic.
Dr. Edwards and Dr. McGrady performed the first procedure; the second procedure was performed by Dr. Leon Hamrick, Jr., a urologist. After the surgery, Durham was dismissed from the Hospital. Subsequently, she developed a postoperative infection that required her to be rehospitalized and to undergo extensive treatment.
On May 27, 1998, Durham sued Dr. Edwards, Dr. Hamrick, and the Hospital. The complaint, as finally amended, alleged, in pertinent part:
"2. [Durham] . . . avers that [the Hospital] breached the minimum standard of care required of it, and, hence, was negligent in one or more of the following respects, to-wit, its [nursing staff]:
 "a. Negligently failed to insert the preoperative standing orders of Dr. John Edwards in [Durham's] chart;
 "b. Negligently failed to follow the preoperative standing orders of Dr. John Edwards;
 "c. Negligently failed to administer preoperative, prophylactic or perioperative antibiotics ordered by Dr. John Edwards;
 "d. Negligently failed to properly and adequately assess and prepare [Durham] preoperatively;
 "e. Negligently failed to follow a standing order
concerning the plaintiff's care; [and]
 "f. Negligently cleared and allowed the plaintiff to proceed to surgery without the proper execution and documentation of Dr. John Edwards' preoperative standing orders. . . ."
(Emphasis added.) By a joint stipulation, Dr. Edwards and Dr. Hamrick were dismissed from the action, and the case proceeded to trial solely against the Hospital.
A jury trial began on July 7, 2003. On July 15, 2003, after the jury was charged, but before it retired to deliberate, the trial judge designated C.W. as the alternate juror, stating: "She will have to go in my office [while the jury deliberates] or somewhere or one of the conference rooms or something." The jury then deliberated for approximately an hour on July 15 and throughout the following day. On July 17, one of the jurors failed to appear for jury duty. The court was informed by the remaining jurors that the absent juror had *Page 161 
left the state to attend a family reunion. The following discussions then transpired among the court and counsel:
 "THE COURT: Well, this is something we certainly would not anticipate that somebody would take it upon themselves just to leave. Now, you have got two choices. Now — and this is something that would definitely not be, you know — if I would have known, I could guarantee you, we would not have let her leave. Because she never told me that she would even think about — I never knew anything about going to New York or even — when something was said about going to a family reunion, she said that I have got a family reunion on Wednesday.
". . . .
 "THE COURT: Now, we can either go with 11, . . . which you said you don't want to go with 11, or we can put the alternate in there. Now, the alternate has not talked to anybody. She has been in that room in there. Now, I guess first of all I've got to find out what was y'all's position that you didn't want to go with less than 12 and find out whether or not you want to go with less than 12 now because you basically are having to put somebody else in there who has not deliberated.
 "MR. COOPER [counsel for the Hospital]: I think in discharging my duty to my client, assuming that what appears to be the case ultimately is confirmed; that is, that Ms. [S.] has left and is either in New York or on her way to New York. Then, I would have to ask for a mistrial, based on her unavailability to complete the deliberations. I am trying to make Your Honor aware of the position. I am not saying —
"THE COURT: Yes, sir.
 "MR. COOPER: I can't agree to go with 11. If the Court's decision, assuming that that is what we suspect is confirmed, that is, that Ms. [S.] has, I guess, abandoned the jury or left without leave of the Court. And if assuming that I made the motion that I feel compelled to make and if the Court were to overrule such a motion, then I think that the Court would need to inquire of [C.W.] certain things before she was put on the jury.
"THE COURT: Yes, sir.
 "MR. COOPER: And these are some questions that before the Court made that decision, that I would like put to [C.W.] by the Court. And the reason that I ask that is, someone was in there with her alone with the door closed on the first day of deliberations. Frankly that disturbs me. I don't know what was said and I suppose each side could ask her. I would feel better if the Court put those questions to her before the Court made a determination whether to permit — I am sorry. I should have made a copy [of questions to be posed to C.W.] to give to [counsel] before the Court made an ultimate decision as to whether you will allow her to continue the deliberations.
 "Even if the Court reached that determination, I feel that — to put an alternate in after a day and a couple of hours of deliberations puts the defendant at an extreme disadvantage and I would have to renew my motion for a mistrial. I am just trying to make you aware, Judge of what and why.
 "THE COURT: I understand. One thing, Bob [Mr. Cooper], I want you to know, I know you are doing exactly what you are supposed to do. Don't worry about that. You are doing your job to take care of your client. If you didn't do that, then I would say, Bob, you had better — you should make a motion. *Page 162 
"MR. COOPER: Yes, sir.
 "THE COURT: That is what you ought to do. These are things that I need to ask because these same questions are going to apply also to [Durham's] side. She — you know, she may — we don't know what she may have been doing for sure. We may need to find out.
". . . .
 "THE COURT: All right. First of all, let me ask [Durham], what is y'all's position as far as proceeding.
 "MR. COOK [cocounsel for Durham]: Judge, we oppose the mistrial. We think that the procedure that you set out for the trial of this case was the appropriate one and one that could now be used now that we have a juror that apparently has dropped off this panel. We have an alternate. I think that, to be on the cautious side, that you might want to say to them that since this alternate has not been involved in deliberations thus far, they have to start afresh and they can bring her up to speed as to what they have discussed and that this juror who was previously qualified and sworn is qualified to join this panel at this point and to complete the deliberations in this case.
 "THE COURT: I think it would be important that if we — first of all to go over these questions and find out these things. And then like you say, if there has been no tainting one way or the other of the alternate, then to make sure that they go through and tell them to go through the evidence and have a complete discussion of the evidence again. Sort of like take the chalkboard and wipe it off and have a clean slate and start over as if they are beginning now, you know, if she is so-to-speak a clean juror.
 "I guess what I am saying is I deny your motion for a mistrial. . . .
 "MR. COOPER: There is another alternative that the Court could consider. I don't offer it up as a desirable alternative. The jury could recess [its] deliberations until Ms. [S.] returns from New York.
 "MR. COOK: Judge, we would be opposed to that. I think that these jurors have been in attendance for this is the ninth day since this case started. If Ms. [S.] in fact is not available, we have an alternate that is qualified and this jury could continue with [its] deliberations this morning.
 "MR. COOPER: It's the dynamic of the deliberation process that makes me object to substituting the alternate at this late point in the deliberations."
(Emphasis added.) Alternate juror C.W. was then brought before the court and counsel, was sworn in, and was questioned, first by the court, apparently using some of the written questions the Hospital's counsel had previously proposed to be put to her, and then by the Hospital's counsel. C.W. denied that anyone had talked with her while she was in a conference room awaiting being recalled to the jury, other than another circuit judge who had entered the conference room to inquire if she needed any reading material. According to C.W., she and the judge had no discussion about the case, and no one else said anything to her that would influence her thinking or feelings about the case one way or another. She believed that she could be an impartial juror; that she could weigh the evidence and testimony and be fair to both sides; and that she could render a true and impartial verdict. She affirmed that, although she had been apart from the other jurors for a day and a half, she could rejoin them and interact with them and freely exchange ideas about the evidence. She stated that she was ready to accept her responsibility of participating *Page 163 
in the jury process and confirmed that in her discussions with the other jurors she could tell them what she thought about the evidence and then render a verdict based on that evidence.
When there were no further questions to be put to C.W., she was instructed to prepare to rejoin the jury and to receive additional instructions. Thereafter, in her absence, the proceeding continued as follows:
 "THE COURT: All right. Now, I am going to let either side put on the record whatever y'all want to put on the record. I told you what I am going to tell them. So y'all can put on the record what y'all would like to say about that. . . .
 "MR. COOPER: At this time, we would renew our motion for mistrial on the grounds that we previously cited
and the additional grounds that there was apparently a fairly lengthy conversation at the time when [C.W.] had just been identified as the alternate and excused from jury service. And I think it's unduly prejudicial to the [Hospital] to permit her to enter the jury deliberations at this point and at this late date under these circumstances. And despite the Court's efforts to articulate what [C.W.'s] responsibility is with regard to entering the jury deliberations at this point, I do not think that the Court can adequately safeguard the interest of the [Hospital] by permitting [C.W.] to enter the deliberations and we would renew our motion for a mistrial.
 "THE COURT: All right, sir. I am going to overrule your motion and give you an exception to my ruling.
That is the purpose of the alternate is for situations like this, situations which you have sickness or death or other situations and often-times we have to begin these things again. I remember many occasions and particularly beginning with a situation in which I was involved in a two-week trial and during the bombing trial where we had two alternates that had to be put on at different times during the case because of illness of one person and then another person became mentally ill and [I] removed the person. And they were also in that case motions made for a mistrial and had to be overruled and had to be brought up to speed in order to be able to do the deliberations. I am going to overrule your motion and give you an exception to my ruling."
(Emphasis added.)
Finally, the judge assembled the reconstituted jury and instructed it as follows:
 "What I want you all to do, since we have a new member of the jury in here, I want you all to go over the evidence again and bring [C.W.] up to speed. Begin your deliberations and discussion of the evidence so that she will be able to have an active discussion with you all of this evidence, [and bring] her up to speed about your deliberations. You all can have an open discussion — start anew. So, start anew as if you all were beginning your deliberations, now. Okay? Consider it that I have just brought you here and you are just now beginning your deliberations. Okay? So, I have now given the case to you."
There were no objections to this supplemental charge.
After deliberating for two hours, the jury returned a verdict, awarding Durham $333,120 for past compensatory damages and $432,800 for future compensatory damages, for a total of $765,920. The court entered a judgment on that verdict.
The Hospital moved for a new trial, or, in the alternative, to alter, amend, or vacate the judgment. Specifically, the Hospital *Page 164 
contended (1) that the verdict was against the weight of the evidence, (2) that the trial court erred in denying its motion for a mistrial, and (3) that the judgment entered "did not conform to the requirement of § 6-5-543(b), Code of Alabama 1975, . . . . that payments for any amount of future damages be made in periodic payments." The trial court denied the motion by an order handwritten on the case action summary sheet, stating:
 "Motion for new trial is denied. Motion to alter or amend or vacate the judgment is denied. The future damages under § 6-5-543(b) are not to be structured and paid in periodic payments. Those not being applicable here and to apply [the statute] would be a violation of the right to trial by jury."
From the denial of that motion, the Hospital appeals, making the same three arguments asserted in its posttrial motion.
I. Juror Substitution
The Hospital contends that the trial court erred in replacing the absent juror with the alternate juror after the jury had begun deliberating. It first insists that Ala. R. Civ. P. 47(b) prohibited the substitution of C.W. for the absent juror. Rule 47(b) provides, in pertinent part:
 "The regular jury and the alternates will be impaneled. Jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties shall be discharged. Just prior to the time the jury retires to consider its verdict, the court shall supply any vacancies from the list furnished by the clerk, beginning with the last name stricken, then next to last and so on until the regular number of jurors has been reached. Other alternate jurors impaneled but not used shall be discharged."
(Emphasis added.) The Hospital argues that "while Rule 47 allows for the substitution of alternate jurors for jurors who become unable to perform their duties before the jury retires to deliberate, it makes no similar provision for the utilization of alternate jurors after the jury begins its deliberations." (Hospital's brief, at 27.) Thus, it insists, "[t]he substitution of an alternate juror for a regular juror on the third day of deliberations is contrary to the express dictates of Rule 47." (Hospital's brief, at 28.)
Durham, however, correctly points out that the Hospital first apprised the trial court of the alleged prohibition to the substitution in Rule 47(b) in its motion for a new trial. Consequently, she argues, the Hospital waived its objection to the substitution. We agree in part.
"It is well established that this Court will not `reverse a trial court's judgment based on arguments not presented to [it].'" Avis Rent A Car Systems, Inc. v. Heilman,876 So.2d 1111, 1124 (Ala. 2003) (quoting Brown v. Wal-Mart Stores, Inc.,864 So.2d 1100, 1104 (Ala.Civ.App. 2002)). See also Pate v.Rollison Logging Equip., Inc., 628 So.2d 337, 343 n. 2 (Ala. 1993) (the trial court will not be placed in error on the basis of issues never presented to it); Smith v. Equifax Servs.,Inc., 537 So.2d 463 (Ala. 1988). "When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence; and the objecting party cannot predicate error upon the ground not stated in the trial court, but raised for the first time on appeal." Nichols v. SoutheastProp. Mgmt., Inc., 576 So.2d 660, 662 (Ala. 1991) (citations omitted).
Moreover, a ground offered in support of an objection to a procedural defect in the trial, asserted for the first time in amotion for a new trial, presents nothing for review. Ex parteEaton, *Page 165 675 So.2d 1300 (Ala. 1996). "[A] party cannot allow a trial to be conducted, and then, on a motion for a new trial, raise arguments that should have been presented during trial." 675 So.2d at 1301.Rush v. Eason Plumbing Elec. Contractors, Inc.,361 So.2d 516, 518 (Ala. 1978) ("A motion for a new trial cannot replace a timely objection or exception which could, and should, properly be made during the trial."). Thus, the Hospital cannot rely on Rule 47(b) as a ground for a new trial.
Therefore, we agree that the trial court's denial of the Hospital's motion for a mistrial cannot be deemed erroneous on the basis of Rule 47(b). The Hospital argued other grounds to the trial judge, however, and is entitled to rely on them as bases for urging that the judge erred in overruling its motion for a mistrial, assuming that it has properly argued them before this Court. Any grounds not argued to the trial court, but urged for the first time on appeal, cannot be considered. Bagley v. MazdaMotor Corp., 864 So.2d 301 (Ala. 2003); Lee v. YES ofRussellville, Inc., 858 So.2d 250 (Ala. 2003); and Crutcher v.Wendy's of North Alabama, Inc., 857 So.2d 82 (Ala. 2003).
The Hospital asserted to the trial judge that a mistrial was required because the insertion of an alternate onto the jury after lengthy deliberations by the jury would put the Hospital "at an extreme disadvantage" and that it was "the dynamic of the deliberation process" that prompted its objection "to substituting the alternate at this late point in the deliberations." Further, after the questioning of C.W. had concluded, the Hospital renewed its motion for a mistrial "on the grounds that we previously cited and the additional grounds that there was apparently lengthy conversation [with the other circuit judge] at the time when [C.W.] had just been identified as the alternate and excused from jury service." Counsel for the Hospital argued that it would be "unduly prejudicial" to the Hospital to allow C.W. to enter the jury deliberations "at this late date under these circumstances" and expressed the view that "despite the Court's efforts to articulate what [C.W.'s] responsibility is with regard to entering the jury deliberations at this point, I do not think that the Court can adequately safeguard the interest of the [Hospital] by permitting [C.W.] to enter the deliberations." Notably, none of these "grounds" assert that it would be per se procedurally impermissible to allow a substitution of an alternate in the middle of a jury's deliberations, and no contention was made that such a mid-deliberations substitution would violate any procedural rule, statute, or provision of the Alabama Constitution. Rather, the reasons cited to the judge were all related to the stage of the deliberations at which a substitution of an alternate for a juror would take place and expressed concerns about the conversation between C.W. and the other circuit judge. Finally, counsel for the Hospital expressed reservations as to whether the trial court's efforts to articulate to C.W. what her responsibilities were with regard to entering the jury deliberations were adequate to safeguard the Hospital's interests.
On appeal, the Hospital argues, in addition to the effect of Rule 47(b), Ala. R. Civ. P., that "[t]o allow an alternate juror to be placed on the jury after the jury ha[s] deliberated for more than an entire day . . . is fundamentally unfair and undermines the dynamics of the deliberation process." (Hospital's brief, p. 26.) The Hospital also argues that "upholding a post-submission substitution would be contrary to § 11 of the Alabama Constitution[,] which requires a jury of 12 jurors and a unanimous verdict." We cannot entertain this latter argument because it was *Page 166 
never presented to the trial court. Lastly, the Hospital argues that no provision of Alabama law expressly allows for the substitution of an alternate juror for a regular juror once deliberations have begun, but it does not argue conversely that any provision of Alabama law disallows such a procedure, other than the procedurally unavailing references to Rule 47 and § 11
of the Alabama Constitution.
We agree with the Hospital that the appellate courts of this State have never addressed the issue whether such a mid-deliberations substitution of an alternate juror is permissible. In Cork v. State, 433 So.2d 959 (Ala.Crim.App. 1983), a regular juror was discharged immediately before the case was submitted to the jury for deliberations, and an alternate substituted. The appellant in that case had objected to the substitution on the basis that there was no necessity for excusing the original juror. The Court of Criminal Appeals concluded that the trial judge had acted within its sound discretion in excusing the juror. In Toombs v. State,739 So.2d 550 (Ala.Crim.App. 1999), a mid-deliberations substitution was made and, although the defendant moved for a mistrial on the ground that the substitution infringed on his right to a fair trial, he did not argue that ground on appeal. Rather, he argued on appeal only that the trial judge had committed reversible error by having an ex parte communication with the jury after it had begun its deliberations. Thus, the Court of Criminal Appeals held that the issue argued on appeal had not been preserved but volunteered that, even if it had, "the trial judge's communication with the jury did not amount to reversible error."739 So.2d at 552.
Both parties have cited various cases from other jurisdictions on point, but most of those cases are inapposite because they rely on a particular rule of procedure of that jurisdiction and/or a particular state constitutional provision, whereas for the reasons explained, we cannot consider on this appeal the implications of Rule 47, Ala. R. Civ. P., or § 11 of the Alabama Constitution. A thorough survey of the cases from other jurisdictions is found in David B. Sweet, Annotation, Propriety,Under State Statute or Court Rule, of Substituting State TrialJuror with Alternate After Case has been Submitted to Jury, 88 A.L.R.4th 711 (1991). Both the Hospital and Durham discuss in their respective briefs a number of those cases, and it may be fairly said that with respect to the two main issues involved — whether a mid-deliberation substitution is error per se and whether such an error can be considered harmless — cases go both ways. All of the cases cited by the Hospital are criminal cases, including some death-penalty cases. In most of those cases, a state procedural rule or a state statute, or both, expressly mandated the discharge of alternate jurors once the regular jurors began their deliberations. For example, in People v.Burnette, 775 P.2d 583 (Colo. 1989), and State v. Bobo,814 S.W.2d 353 (Tenn. 1991), both cited by the Hospital, the state's applicable rule of criminal procedure mandated that "[a]n alternate juror who does not replace a regular juror shall be discharged when the jury retires to consider its verdict." Rule 18.4(g)(1), Ala. R.Crim. P., contains substantially identical language. It may be contrasted with the less specific language of Rule 47(b), Ala. R. Civ. P., but this case does not require us to consider whether that difference in phrasing between the two rules is meaningful. Suffice it to say that in Burnette andBobo the mandatory language controlled. Also implicated in both of those decisions were the respective state constitutional provisions relating to trial by jury.
In certain of the cases in which the court was unwilling to entertain a harmless-error *Page 167 
analysis of a mid-deliberations substitution, it was important that the alternate juror had been discharged or otherwise allowed to resume his or her normal activities in the community before being recalled and that the alternate was not questioned about those activities or a present ability to serve on the jury when recalled. E.g., Burnette. Once we eliminate from the cases cited by the Hospital those relying, in whole or part, on violations of state criminal statutes; violations of state criminal procedural rules; violations of state constitutional provisions relating to the right to trial by jury; and/or the inadequacy of the questioning of the alternate juror and the instructions given the alternate and the remaining regular jurors, we find no case ordering a reversal of a judgment for a mid-deliberations substitution of an alternate juror solely because the substitution created an abstract disadvantage or prejudice to the objecting party or because of "the dynamic of the deliberation process." As the court noted in State v.Sanchez, 129 N.M. 284, 6 P.3d 486, 490-92 (2000), Federal Rule of Criminal Procedure 24(c) originally required that any substitution of an alternate juror occur before the alternate jurors were discharged and before the jury retired to deliberate. Effective December 1, 1999, however, Rule 24(c), Fed.R.Crim.P., was amended to read as follows:
 "When the jury retires to consider the verdict, the court in its discretion may retain the alternate jurors during deliberations. If the court decides to retain the alternate jurors, it shall insure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the court shall instruct the jury to began its deliberations anew."[1]
There is currently no federal counterpart to Rule 47, Ala. R. Civ. P., because the practice of allowing alternate jurors in federal civil trials was abolished effective December 1, 1991.Smith v. Gulf Oil Co., 995 F.2d 638, 645 n. 6 (6th Cir. 1993). However, before December 1991 Fed.R.Civ.P. 47(b) provided, in pertinent part, that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."
"State courts are increasingly willing to allow substitution during deliberation of an alternate juror kept separate from the deliberating jurors." Jon D. Ehlinger, Substitution of AlternateJurors During Deliberations: Constitutional and ProceduralConsiderations, 57 Notre Dame Law. 137, 161 (1981). Should a judge decide, in his or her discretion, to allow an alternate juror to substitute for a regular juror during deliberations, the court should "conduct a careful voir dire of the alternate to determine if he has been subject to any impermissible outside influence and can still make a fair decision." Additionally, "[t]he court should further instruct the regular jurors to begin deliberations anew, or to summarize to the alternate juror the extent of the deliberations to that point." Id. at 164.
The Hospital does not argue on this appeal that the apparently benign conversation between C.W. and the circuit judge who stopped by the conference room where she was waiting should be considered in our analysis of whether her subsequent inclusion in the jury was erroneous. Accordingly, we consider only whether the trial judge erred in refusing to declare a *Page 168 
mistrial in the face of the Hospital's assertion that to place C.W. on the jury would disadvantage and unduly prejudice it in light of the "dynamic of the deliberation process." The court having put to C.W. the questions the Hospital had formulated for submission to her; the Hospital otherwise having been afforded a full opportunity to question C.W. concerning her activities while serving as an alternate and her ability and willingness to participate without restrictions or reservations in the restarted jury deliberations; and the trial judge having clearly instructed the reconstituted jury to "go over all the evidence again and bring [C.W.] up to speed," starting its deliberations anew as if it was just then beginning its deliberations, the prospect of prejudice to the Hospital was certainly ameliorated for purposes of our consideration under Rule 61, Ala. R. Civ. P.:
 "[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not effect the substantial rights of the parties."
Likewise, Rule 45, Ala. R.App. P., dictates that
 "[n]o judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of . . . error as to any matter of . . . procedure, unless in the opinion of the court to which the appeal is taken . . . after examination of the entire case, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
Further, pertinent to the charge the trial judge gave the reconstituted jury is the following feature of Rule 51, Ala. R. Civ. P.:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection."
Given the limited grounds for a mistrial presented to the trial judge and the corresponding narrow scope of our review and the steps the trial judge took to attempt to counteract the potential for the particular prejudice about which the Hospital expressed concern, including an admonitionary final charge to the jury, to which no objection was made, we cannot say that the trial judge committed reversible error in denying the Hospital's motion for a mistrial on the juror-substitution issue.
II. Weight of the Evidence
The Hospital next contends that the trial court erred in denying its motion for a new trial because, it says, "the jury's verdict is contrary to the great weight and preponderance of the evidence." (Hospital's brief, at 43.) The standard of review of an order denying a new-trial motion on the ground that the verdict is against the weight of the evidence is well established. "No ground for reversal of a judgment is more carefully scrutinized or rigidly limited than the ground that the verdict of the jury was against the great weight of the evidence." Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990). "A jury verdict is presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial." Med Plus Props. v. Colcock Constr. Group, Inc.,628 So.2d 370, 374 (Ala. 1993). *Page 169 
 "`Moreover, the denial of a motion for a new trial [on the ground that the verdict is against the weight and preponderance of the evidence] will not be reversed by this Court unless, after allowing all reasonable presumptions as to the verdict's correctness, the preponderance of the evidence is so against it that this Court is clearly convinced that it is wrong and unjust.'"
628 So.2d at 374 (quoting Deal v. Johnson, 362 So.2d 214, 218
(Ala. 1978)). The denial of such a motion "`rests within the sound discretion of the trial court, and this Court will not reverse a ruling in that regard unless it finds that the trial court's ruling constituted an abuse of discretion.'" Vaughan v.Oliver, 822 So.2d 1163, 1170 (Ala. 2001) (quoting ColbertCounty-Northwest Alabama Healthcare Auth. v. Nix, 678 So.2d 719,722 (Ala. 1995)).
The factual issue, as the Hospital defines it, is whether the nursing staff of the Hospital "breached the applicable standard of care by failing to give [Durham] a pre-operative antibiotic, or in failing to question [Dr. McGrady's] handwritten orders that did not include an order that a pre-operative antibiotic be given." (Hospital's brief, at 43-44.)
It is undisputed that the nursing staff followed Dr. McGrady'sadmission orders, which did not prescribe a preoperative antibiotic. Durham's theory of the case, however, is that the Group had supplied the Hospital with "standing orders" to be used in admitting patients being treated by the Group and that those standing orders supplemented Dr. McGrady's admission orders anddid require the nursing staff to administer preoperative antibiotics.[2] The jury evidently agreed with Durham's theory of the case and found that there were standing orders requiring the nursing staff to administer preoperative antibiotics to patients being treated by the Group and that those orders were applicable to Durham.
The Hospital concedes that evidence was presented to the jury indicating that the Hospital had been given such a standing order but merely contends that "the great weight of evidence demonstrated that it was not." We disagree. The record contains ample evidence of the existence of a standing order that required the nursing staff to administer preoperative antibiotics to patients being treated by the Group.
For example, the record contains a document styled as follows:
"Lloyd Noland Hospital
"Physician's Orders: GYN # 10 Standing Orders
"Anterior and Posterior Repair (`GYN 10')"
(Emphasis added.) The GYN 10 procedure contained a list of 13 directives. Item 1 stated, in pertinent part: "Admit to Drs. Walton, . . . Edwards, . . . or McGrady." Item 13 stated: "Cefotan 2 Gms. IVSS, unless allergic, one hour before surgery." Both Dr. Edwards and Dr. McGrady testified that GYN 10 was a set of standing orders the Group had given the Hospital and that those orders were applicable to Durham. They also testified that the GYN 10 procedure required the nursing staff to administer preoperative antibiotics to Durham. Although the Hospital presented the testimony of nurses and others *Page 170 
who disputed the physicians' testimony, the jury evidently believed Dr. Edwards and Dr. McGrady, as it was entitled to do. In short, the trial court did not err in denying the Hospital's motion for a new trial based on the Hospital's argument that it did not breach an applicable standard of care in failing to administer a preoperative antibiotic to Durham.
III. Periodic Payments
Finally, the Hospital contends that "[t]he trial court erred in failing to structure the future damages award to comply with the periodic payment provisions of the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-543(b), and in denying [the Hospital's] motion to alter or amend the judgment to comply with the statute." (Hospital's brief, at 51.) As noted earlier, the trial court expressly held that to apply § 6-5-543(b), Ala. Code 1975, a part of the Alabama Medical Liability Act ("the AMLA"), to require the structuring of the future damages "would be a violation of the right to trial by jury." Durham argues that §6-5-543(b), the future-damages provision of the AMLA, violates Ala. Const. 1901, Article I, § 11 ("That the right of trial by jury shall remain inviolate.").[3] This is so, she insists, because the future-damages provision of the AMLA differs in no relevant respect from the periodic-payment scheme provided by Ala. Code 1975, §§ 6-11-1 to -7, which was part of the "Tort-reform Act of 1987" that this Court declared unconstitutional, as violative of § 11, in Clark v. ContainerCorp. of America, Inc., 589 So.2d 184, 198 (Ala. 1991). InClark six of the seven participating Justices held that "[t]he sentence in § 6-11-1 providing that `The fact-finder shall not reduce any future damages to present value'; all of § 6-11-3; and, consequently, all of § 6-11-4, since it has no operative effect apart from § 6-11-3; and all of § 6-11-5 violate §§ 11 and 13 of the Constitution, when a jury has been demanded, and as applied to the case of Billy Ray Clark and HalliburtonIndustrial Services Division v. Container Corporation of America,Inc.," in which, in the United States District Court for the Southern District of Alabama, a jury had awarded Clark compensatory damages of $289,800 for lost future wages.589 So.2d at 198.
Section 6-11-3, at issue in Clark, provides:
 "Where the damages assessed against a defendant by the trier of fact include an award of future damages, the trial court shall comply with the following in rendering its judgment in the case:
 "(1) Judgment shall be entered against the defendant for all past damages and punitive damages assessed against the defendant by the trier of fact.
 "(2) If the award of future damages assessed by the trier of fact is $150,000 or less, the trial court shall enter judgment against the defendants for the amount of such future damages.
 "(3) If the award of future damages assessed by the trier of fact is greater than $150,000, the trial court shall enter judgment as follows:
 "a. Judgment shall be entered against the defendant for $150,000 of such future damage.
 "b. If, as part of the plaintiff's contract with his attorney, the plaintiff is obligated to pay his attorney *Page 171 
a fee based on that portion of the award of future damages which exceeds $150,000, the court shall determine what portion of the award of future damages in excess of $150,000 is owed to the attorney under the contract and shall enter judgment for the remainder of the award of future damages in excess of $150,000 as provided in c, below. As to that portion of the award of future damages in excess of $150,000 which is owed to the plaintiff's attorney, that portion shall be reduced to present value by the court and judgment shall be entered against the defendant for the reduced amount.
 "c. 1. For that portion of a future damage award in excess of $150,000 and in excess of the attorney's fee subject to b, above, judgment shall be entered requiring the defendant to pay that portion of such future damages by periodic payments over a period of years not to exceed such period of years as, according to the evidence offered during the trial of the case, such future damages may be incurred. In entering a judgment against the defendants ordering the payment of future damages by periodic payment, the trial court shall make a specific finding as to the dollar amount of periodic payments which will compensate the judgment creditor for such future damages as the same may be incurred, as determined from the evidence offered during the trial of the case. If, or to the extent that, the evidence offered at trial did not indicate the approximate time or time frame or both within which the future damages would be incurred, the trial court, for the purpose of determining the amount of periodic payments and the interval between such payments, shall conclusively presume that such damages will be incurred throughout the life expectancy of the judgment creditor on an equal periodic basis. The judgment ordering payment of future damages by periodic payments shall specify the recipient or recipients of the payments, the dollar amounts of the payments, the interval between payments, and the number of payments or period of time over which payments shall be made. The total amount of all periodic payments when added to the sum of $150,000 and when added to that portion of the future damages award, not reduced to present value, which was used to calculate the attorney's fee in paragraph b, above, shall not exceed the total amount of future damages contained in the verdict of the trier of fact.
 "2. As a condition to authorizing periodic payments for future damages, the court must receive adequate assurance that the defendant can and will make all required payments. Such assurance may include the requirement that the defendant either have sufficient financial ability to make all required payments, post adequate bond or other security, give evidence that there exists an insurance company, registered in this state, which is obligated to pay the judgment, or purchase an annuity of sufficient value to pay the future damages as structured, or any accelerated payments of those damages which might be required by this article. Nothing contained herein shall be construed as limiting the authority *Page 172 
of the trial court to order a new trial, enter a judgment [as a matter of law], or order a remittitur of damages. The provisions of this section shall also apply to any judgment following remittitur.
 "3. An award of future damages shall not be reduced to present value by the court, except as required in b above, and no interest is to be charged on said damages. Evidence of the present value of future damages is inadmissible in cases covered by this article, except at a hearing authorized by Section 6-11-5. If, however, the court determines that damages which should be structured pursuant to c above, cannot be structured due to the failure of the defendant to provide the financial assurances required in c 2, above, that portion of the future damage award shall be reduced to present value by the court prior to entry of judgment."
Article I, § 11, of the Alabama Constitution, a part of the Declaration of Rights, provides:
 "That the great, general, and essential principles of liberty and free government may be recognized and established, we declare:
". . . .
 "That the right of trial by jury shall remain inviolate."
Article I, § 13, provides:
 "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
In Clark, this Court held that the provisions of the tort-reform future-damages scheme prohibiting the jury from "`reduc[ing] any future damages to present value'" violated the right to a trial by jury. 589 So.2d at 195. This was so, because, the main opinion explained, "[a]t the time of the ratification of the Constitution, . . . it was the jury's function to reduce future earnings to present value." 589 So.2d at 193. Consequently, the provisions of the tort-reform future-damages scheme took "away from the jury a factfinding function . . . that was within the province of the jury at the time of the ratification of the Constitution of 1901." 589 So.2d at 195.
In its principal brief the Hospital's argument on the question of the constitutionality of § 6-5-543(b) consists of only the following sentence: "There is no basis for . . . the trial court's . . . conclusion that application of the statutory provisions would violate the right to trial by jury." (Hospital's brief, at 54.) Clark is ignored.
 "Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant. Rule 28(a)(5), Ala. R.App. P.; Henderson v. Alabama A M Univ., 483 So.2d 392 (Ala. 1986)."
Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990). See also McLemore v. Fleming, 604 So.2d 353, 353 (Ala. 1992). In its principal brief the Hospital points out that inVaughan v. Oliver, supra, we ordered compliance with §6-5-543(b). In Vaughan, we held that "the trial court erred in refusing to amend [a] judgment [of $2,000,000 in future damages] to conform to § 6-5-543(b)," 822 So.2d at 1166-67, and we remanded the case with instructions to apply the future-damages provisions of the AMLA. 822 So.2d at 1179. However, the constitutionality of the future-damages provision of the AMLA was *Page 173 
not challenged in Vaughan; therefore, this Court did not consider it. It is a familiar principle that "this Court will never search for constitutional infirmities in statutes, but will only consider those questions raised and insisted upon."Ex parte Hanna, 267 Ala. 527, 529, 103 So.2d 720, 722 (1958) (emphasis added). "If `no considerations of public policy or morals are involved[, a] party may . . . waive a rule of law, or statute, or even a constitutional provision.'" Armstrong v.Roger's Outdoor Sports, Inc., 581 So.2d 414, 416 (Ala. 1991) (quoting Alabama Terminix Co. v. Howell, 276 Ala. 59, 62,158 So.2d 915, 918 (1963)). Thus, Vaughan is inapposite.
In its reply brief, in response to Durham's argument concerning the conclusive effect of our holding in Clark, the Hospital attempts, for the first time, to distinguish or discreditClark, quoting from the dissent in that case, and arguing as follows:
 "Even if the right to trial by jury does protect all fact-finding functions of the jury as Clark
suggests, § 6-5-543 does not impinge those functions. Section 6-5-543 does not transfer the function of determining present value from the jury to the trial court. Rather, it completely eliminates any issue regarding the present value of the future damages. The future damages are to be paid when the trial evidence shows they will be incurred, so there is no fact-finding to be made regarding the present value of those damages or the appropriate discount rate for making a present value determination. See
6-5-543(b)(2)b. This statute does not transfer from the jury to the court the function of determining present value — it obviates the need for a determination of present value.
 "Neither does the statute remove from the jury the function of factually determining the amount of the plaintiff's remedy for the injury done him. The jury still makes the determination of the amount of damages to which plaintiff is entitled for her injury. It is only the mode of payment of the damages accessed that is modified. The statute simply alters the timing of plaintiff's receipt of her damages; she receives them when incurred, rather than in advance."
It is a well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in the reply brief. Birmingham Bd. ofEduc. v. Boyd, 877 So.2d 592 (Ala. 2003); Sanders v.Smitherman, 776 So.2d 68, 73 (Ala. 2000). Moreover, the provisions of § 6-5-543(b)(2)b. implicated by the above-quoted portion of the Hospital's argument are identical in all essential features with the corresponding provisions of § 6-11-3 held unconstitutional in Clark, with the exception that § 6-11-3(3)c.1 excludes attorney fees from that portion of future damages subject to structuring. Accordingly, whether we understand the above-quoted argument to be an attempt to distinguish, or to discredit, Clark, it fails. It is clear that § 6-5-543(a) and (d), like the corresponding provisions of the tort-reform future-damages scheme, namely, §§ 6-11-1, -3, and -5, deprive the jury of the right to reduce future earnings to present value. The Hospital does not argue that Clark should be overruled; rather, it simply states that "Clark should not be followed in this case." Thus, the holding of Clark is unchallenged. We follow Clark,[4] therefore, and hold that *Page 174 
all of § 6-5-543 violates the right to trial by jury guaranteed by § 11 of the Constitution of Alabama.
In summary, the trial court did not err in declining to enforce § 6-5-543, and it did not err in denying the Hospital's motion for a new trial. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
WOODALL, J., concurs in the result.
[1] Rule 24 was amended in 2002 as part of a general restyling of the Federal Rules of Criminal Procedure. Language substantially similar to the quoted language now appears in Rule 24(c)(3).
[2] In defining "standing orders," the Hospital accepts the definition contained in Medical Protocols, Standing Orders andPreprinted Orders (adopted by the Alabama Board of Nursing and Board of Medical Examiners, March 25, 1993). The Protocols define standing orders as "written documents containing medical directives for the provision of patient care in selected stipulated clinical situations. Standing orders are generally formulated by the professional members of a department in a hospital or other health care facility."
[3] Durham properly challenged the constitutionality of §6-5-543 in the trial court in her "Response in Opposition to Defendant's Post-Judgment Motions," serving a copy of the challenge on the attorney general.
[4] To the extent the amicus curiae Medical Association of the State of Alabama advances different arguments in an attempt to distinguish or discredit Clark, those arguments cannot be considered. See Morgan County Comm'n v. Powell, 292 Ala. 300,311, 293 So.2d 830, 840 (1974), and State ex rel. Baxley v.Johnson, 293 Ala. 69, 74, 300 So.2d 106, 110-11 (1974).