WINDOM, Presiding Judge.
Roger James Young and Timothy James Davis were tried jointly and convicted of various offenses they committed together. In particular, Young was convicted of one count of first-degree burglary, see § 13A-7-5, Ala. Code 1975, and two counts of first-degree robbery, see § 13A-8-41, Ala. Code 1975. As a result, Young was sentenced to concurrent terms of 20 years in prison for each conviction. Davis was convicted of one count of first-degree burglary, see § 13A-7-5, Ala. Code 1975, two counts of first-degree robbery, see § 13A-8-41, Ala. Code 1975, and one count of attempted murder, see §§ 13A-4-2 and *1079 13A-6-2, Ala. Code 1975. Davis was sentenced to serve concurrent terms of 20 years in prison for the burglary and robbery convictions and a consecutive term of 20 years for the attempted-murder conviction.
The relevant facts are as follows. During the trial and after numerous witnesses had testified, Juror S.H. informed the circuit court that she worked with Davis's wife, Joycelyn Davis. The circuit court asked S.H. if working with Mrs. Davis would affect her ability to be fair and impartial. S.H. indicated that it would be uncomfortable but that it would not affect her ability to be fair and impartial. At that point, the circuit court decided to leave S.H. on the jury.
The parties concluded their cases and the jury was instructed on a Friday. The alternate jurors were released from service with no instructions. The jurors then began deliberating at 1 o'clock p.m. At 4 o'clock p.m., the court recessed for the weekend and instructed the jury to return at 1 o'clock p.m. the following Monday to resume deliberations.
When the jury returned that Monday, the jury foreperson sent a note to the circuit court indicating that there was an issue with S.H. The circuit court questioned S.H. about the issue, and S.H. informed the court that, although she had said that she could be fair and impartial, she actually could not because of her working relationship with Joycelyn Davis. She told that court that she "absolutely cannot do this." (R. 378.) The circuit court then released S.H. from further jury duty. After releasing S.H., the circuit court informed the remaining jurors that it would try to contact an alternate juror and instructed the remaining jurors to stop deliberating and to take a recess.
During the recess, defense counsel moved for a mistrial arguing, among other things, that the alternate jurors had been released for the weekend with no instructions to refrain from talking about or investigating the case. The circuit court denied defense counsel's motion. Later, alternate Juror F.J. was contacted and indicated that she could return to the court the next day, Tuesday.
On Tuesday when F.J. returned, the following occurred:
"THE COURT: ... [F.J.,] you left us at the close of the case on Friday; is that right?
"[F.J.]: Yes, sir.
THE COURT: Since that time, in the event you have discussed the case with anyone or had anyone discuss it with you, are you able to set aside any information you have gained during that time and deliberate strictly on the evidence presented during the trial?
"[F.J.]: Yes, sir.
"THE COURT: Any questions you want to ask me?
"[F.J.]: No, sir.
"THE COURT: That's all I need to know."
(R. 389.) The circuit court then instructed the jury that F.J. would be returning and that, once F.J. returned, the jury must begin its deliberations anew. Defense counsel again objected to the substitution and moved for a mistrial arguing that it was improper to substitute an alternate juror who had not been instructed to avoid outside influences. The circuit court again denied counsel's motion. Thereafter, the jury found Young and Davis guilty on all charges.
On appeal, Young and Davis argue that the circuit court improperly substituted F.J. for S.H. According to Young and Davis, when the circuit court released F.J. on Friday, it failed to instruct her to refrain from discussing the case and/or allowing herself to be swayed by any outside *1080 influences. They assert that, when the circuit court brought F.J. back to serve the next Tuesday, it failed to inquire as to what, if any, outside influences she may have had during the time in which she had been released. They argue that the circuit court merely made a cursory inquiry regarding whether F.J. believed she could set aside any information she had gained from discussions and decide the case based on the evidence presented at trial. Young and Davis contend that the procedure used to substitute F.J. for S.H. violated this Court's holding in Peak v. State, 106 So.3d 906 (Ala. Crim. App. 2012), and the Alabama Supreme Court's holding Lloyd Noland Hospital v. Durham, 906 So.2d 157 (Ala. 2005) ; therefore, the circuit court should have granted a mistrial.[1]
" 'A mistrial is a drastic remedy that should be used sparingly and only to prevent manifest injustice.' Hammonds v. State, 777 So.2d 750, 767 (Ala. Crim. App. 1999) (citing Ex parte Thomas, 625 So.2d 1156 (Ala. 1993) ), aff'd, 777 So.2d 777 (Ala. 2000). A mistrial is[, however,] the appropriate remedy when a fundamental error in a trial vitiates its result. Levett v. State, 593 So.2d 130, 135 (Ala. Crim. App. 1991). 'The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court's ruling on a motion for a mistrial will not be overturned absent a manifest abuse of that discretion.' Peoples v. State, 951 So.2d 755, 762 (Ala. Crim. App. 2006)."
Peak, 106 So.3d at 915.
At the conclusion of the case in Peak, the circuit court released the alternate juror but instructed her as follows: " 'I would ask you not to discuss the case with anybody until tomorrow midmorning. All right. If we get past tomorrow midmorning, then you can discuss [the case] with whomever you'd like after that time.' (R. 1017.)" Peak, 106 So.3d at 913. The following morning, after the jury had been deliberating, it became necessary to release a juror who had been serving on Peak's jury. Id. The circuit court recalled the alternate juror.
"Once [the alternate juror] returned, the circuit court asked [the alternate juror] if she followed the court's instructions not to talk to anyone about the case. [The alternate juror] assured the court that she had followed the court's instructions and had not discussed the case, other than to tell her husband that it was a serious case, and that it did not bother her to not have to sit on the jury. The circuit court then brought the remaining members of the jury into open court and informed them that [the alternate juror] had returned to serve on the jury [and that they must begin their deliberations anew]."
Peak, 106 So.3d at 913.
On appeal, Peak argued that the circuit court erroneously substituted the alternate juror after jury deliberations had begun. Id. at 915. This Court rejected Peak's argument. Id. at 913. Specifically, this Court held:
"Our Supreme Court recently addressed the issue whether a mid-deliberations substitution of an alternate juror was permissible in Lloyd Noland Hospital v. Durham, [906 So.2d 157 (Ala. 2005) ]. In Lloyd Noland-a civil, medical-malpractice case-the circuit court charged the jury and designated one of the jurors as an alternate. The court instructed the alternate juror to go to one of the conference rooms in the courthouse while the jury deliberated.
*1081 On the second full day of deliberations, 1 of the 12 principal jurors failed to appear for jury duty. The defendant objected to substituting the alternate late in the deliberative process and moved for a mistrial. Lloyd Noland, 906 So.2d at 162. The circuit court denied the motion for a mistrial, brought the alternate before the court, and inquired whether the alternate had spoken to anyone about the case. After learning that no discussion had taken place, the circuit court confirmed that the alternate 'could be an impartial juror; that she could weigh the evidence and testimony and be fair to both sides; and that she could render a true and impartial verdict.' 906 So.2d at 162. The circuit court then assembled the reconstituted jury and instructed it to begin its deliberations anew. After deliberating for two hours, the jury returned a verdict in favor of Durham. The hospital subsequently filed a motion for a new trial, arguing for the first time that replacing the absent juror with the alternate after deliberations had begun violated Rule 47(b), Ala. R. Civ. P. The circuit court denied the motion, and the hospital appealed.
"Finding that the hospital's Rule 47(b) argument was not properly preserved for review on appeal, the Supreme Court considered only whether the circuit court erred in refusing to declare a mistrial in the face of the hospital's assertion that placing the alternate on the jury would disadvantage and unduly prejudice the hospital in light of the 'dynamic of the deliberation process.' Lloyd Noland, 906 So.2d at 167-68. In considering the issue presented, our Supreme Court stated:
" 'We agree with the Hospital that the appellate courts of this State have never addressed the issue whether such a mid-deliberations substitution of an alternate juror is permissible. In Cork v. State, 433 So.2d 959 (Ala. Crim. App. 1983), a regular juror was discharged immediately before the case was submitted to the jury for deliberations, and an alternate substituted. The appellant in that case had objected to the substitution on the basis that there was no necessity for excusing the original juror. The Court of Criminal Appeals concluded that the trial judge had acted within its sound discretion in excusing the juror. In Toombs v. State, 739 So.2d 550 (Ala. Crim. App. 1999), a mid-deliberations substitution was made and, although the defendant moved for a mistrial on the ground that the substitution infringed on his right to a fair trial, he did not argue that ground on appeal. Rather, he argued on appeal only that the trial judge had committed reversible error by having an ex parte communication with the jury after it had begun its deliberations. Thus, the Court of Criminal Appeals held that the issue argued on appeal had not been preserved but volunteered that, even if it had, "the trial judge's communication with the jury did not amount to reversible error." 739 So.2d at 552.
" 'Both parties have cited various cases from other jurisdictions on point, but most of those cases are inapposite because they rely on a particular rule of procedure of that jurisdiction and/or a particular state constitutional provision, whereas for the reasons explained, we cannot consider on this appeal the implications of Rule 47, Ala. R. Civ. P., or § 11 of the Alabama Constitution. A thorough survey of the cases from other jurisdictions is found in David B. Sweet, Annotation, *1082 Propriety, Under State Statute or Court Rule, of Substituting State Trial Juror with Alternate After Case has been Submitted to Jury, 88 A.L.R.4th 711 (1991). Both the Hospital and Durham discuss in their respective briefs a number of those cases, and it may be fairly said that with respect to the two main issues involved-whether a mid-deliberations substitution is error per se and whether such an error can be considered harmless-cases go both ways. All of the cases cited by the Hospital are criminal cases, including some death-penalty cases. In most of those cases, a state procedural rule or a state statute, or both, expressly mandated the discharge of alternate jurors once the regular jurors began their deliberations. For example, in People v. Burnette, 775 P.2d 583 (Colo. 1989), and State v. Bobo, 814 S.W.2d 353 (Tenn. 1991), both cited by the Hospital, the state's applicable rule of criminal procedure mandated that "[a]n alternate juror who does not replace a regular juror shall be discharged when the jury retires to consider its verdict." Rule 18.4(g)(1), Ala. R. Crim. P., contains substantially identical language. It may be contrasted with the less specific language of Rule 47(b), Ala. R. Civ. P., but this case does not require us to consider whether that difference in phrasing between the two rules is meaningful. Suffice it to say that in Burnette and Bobo the mandatory language controlled. Also implicated in both of those decisions were the respective state constitutional provisions relating to trial by jury.
" 'In certain of the cases in which the court was unwilling to entertain a harmless-error analysis of a mid-deliberations substitution, it was important that the alternate juror had been discharged or otherwise allowed to resume his or her normal activities in the community before being recalled and that the alternate was not questioned about those activities or a present ability to serve on the jury when recalled. E.g., Burnette. Once we eliminate from the cases cited by the Hospital those relying, in whole or part, on violations of state criminal statutes; violations of state criminal procedural rules; violations of state constitutional provisions relating to the right to trial by jury; and/or the inadequacy of the questioning of the alternate juror and the instructions given the alternate and the remaining regular jurors, we find no case ordering a reversal of a judgment for a mid-deliberations substitution of an alternate juror solely because the substitution created an abstract disadvantage or prejudice to the objecting party or because of "the dynamic of the deliberation process." As the court noted in State v. Sanchez, 129 N.M. 284, 6 P.3d 486, 490-92 (2000), Federal Rule of Criminal Procedure 24(c) originally required that any substitution of an alternate juror occur before the alternate jurors were discharged and before the jury retired to deliberate. Effective December 1, 1999, however, Rule 24(c), Fed. R. Crim. P., was amended to read as follows:
" ' "When the jury retires to consider the verdict, the court in its discretion may retain the alternate jurors during deliberations. If the court decides to retain the alternate jurors, it shall insure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the court shall instruct the jury to began its deliberations anew."
" '....
" ' "State courts are increasingly willing to allow substitution during deliberation of an alternate juror kept *1083 separate from the deliberating jurors." Jon D. Ehlinger, Substitution of Alternate Jurors During Deliberations: Constitutional and Procedural Considerations, 57 Notre Dame Law. 137, 161 (1981). Should a judge decide, in his or her discretion, to allow an alternate juror to substitute for a regular juror during deliberations, the court should "conduct a careful voir dire of the alternate to determine if he has been subject to any impermissible outside influence and can still make a fair decision." Additionally, "[t]he court should further instruct the regular jurors to begin deliberations anew, or to summarize to the alternate juror the extent of the deliberations to that point." Id. at 164.
" '....
" 'Given the limited grounds for a mistrial presented to the trial judge and the corresponding narrow scope of our review and the steps the trial judge took to attempt to counteract the potential for the particular prejudice about which the Hospital expressed concern, including an admonitionary final charge to the jury, to which no objection was made, we cannot say that the trial judge committed reversible error in denying the Hospital's motion for a mistrial on the juror-substitution issue.'
" Lloyd Noland, 906 So.2d at 166-68.
"In this case, as in Lloyd Noland, the issue before us is limited by the argument that was properly preserved for review on appeal. Therefore, we must decide if the circuit court's decision to replace a juror with an alternate after deliberations had begun necessitated a mistrial under the particular facts and circumstances of this case. The record on appeal established that the circuit court instructed Juror J.G., as the last remaining alternate, not to discuss the case with anyone until midmorning the next day. The jury deliberated for approximately one and one-half hours before going home for the evening. The following day, the circuit court postponed deliberations until it could telephone Juror J.G. to return to court. When questioned if she had followed the circuit court's instructions not to talk to anyone about the case, Juror J.G. indicated that she had complied with the court's instructions. The circuit court then brought the remaining jurors into the courtroom and instructed the jury to begin its deliberations anew. Given the argument presented on appeal and the steps taken by the circuit court to counteract the potential for prejudice, including the circuit court's questioning of Juror J.G. following her return to court and the instructions given to the jury to begin deliberations anew, we cannot say that the circuit court abused its discretion when it denied Peak's motion for a mistrial on the issue of juror substitution. See Lloyd Noland, supra."
Peak v. State, 106 So.3d 906, 915-18 (Ala. Crim. App. 2012) (emphasis added).
In Peak, Judge Joiner wrote a concurring opinion joined by Judge Burke. In his concurring opinion, Judge Joiner explained:
"[T]he unusual circumstances of this case limit the holding of the main opinion to the specific facts presented here. In particular, after charging the jury, the circuit court instructed Juror J.G. that she not talk to anyone about the case 'until tomorrow midmorning.' The circuit court requested Juror J.G.'s telephone number so that she could be contacted if she needed to be called back for service on the jury. The next day, once it became apparent that Juror A.D. should be excused from the jury, the circuit court instructed the bailiff to contact Juror J.G. and ask if she could return to *1084 serve on the jury. After Juror J.G. returned, the circuit court determined that Juror J.G. had followed its instructions, and 'Juror J.G. assured the court that she ... had not discussed the case, other than to tell her husband that it was a serious case, and that it did not bother her to not have to sit on the jury.' 106 So.3d at 913. The circuit court then instructed the jury to disregard its previous deliberations and begin its deliberations anew with Juror J.G. Thus, the circuit court's actions in this case were consistent with the following procedure described in Lloyd Noland Hospital v. Durham, 906 So.2d 157, 167 (Ala. 2005) :
" 'Should a judge decide, in his or her discretion, to allow an alternate juror to substitute for a regular juror during deliberations, the court should "conduct a careful voir dire of the alternate to determine if he has been subject to any impermissible outside influence and can still make a fair decision." [Jon D. Ehlinger, Substitution of Alternate Jurors During Deliberations: Constitutional and Procedural Considerations, 57 Notre Dame Law. 137, 161 (1981).] Additionally, "[t]he court should further instruct the regular jurors to begin deliberations anew, or to summarize to the alternate juror the extent of the deliberations to that point." Id. at 164.'
"Had the circuit court's actions in the case before us not been consistent with that procedure, I am not persuaded that the outcome should necessarily be the same as that reached today."
Peak, 106 So.3d at 922 (Joiner, J., concurring specially).
In the case at hand, the circuit court released alternate Juror F.J. without instructing her to refrain from improper contacts or influences. For three days, F.J. remained free to discuss the case, to visit the crime scene, to conduct experiments, etc. When F.J. was recalled, the circuit court conducted absolutely no voir dire to determine if she had been subjected to any impermissible outside influences. Instead, the circuit court merely asked F.J. if, in the event she had discussed the case with anyone, she could set aside any information she had obtained during those discussions. The circuit court's actions fall far short of the procedure outlined in Peak for recalling an alternate juror mid-deliberations. Consequently, the circuit court violated Young's and Davis's right to a fair and impartial jury.
Further, this Court cannot say that the circuit court's error was harmless. " 'In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before a court's error in violating certain constitutional rights can be held harmless, the appellate court must be able to declare that the error was harmless beyond a reasonable doubt.' " Penn v. State, 189 So.3d 107, 116 (Ala. Crim. App. 2014) (quoting Trimble v. State, 157 So.3d 1001, 1005 (Ala. Crim. App. 2014) ). Here, the circuit court released F.J. for three days with no instructions to avoid improper influences. When F.J. was recalled, the circuit court merely asked if she could set aside any information she had obtained during any discussions but failed to inquire into what impermissible influences she may have been subjected. Further, although F.J. stated that she could set aside any discussions she had had concerning the case, the circuit court's failure to investigate the types of influences to which F.J. may have been subjected or the extent to which F.J. may have been influenced diminishes the weight that may be placed on F.J.'s answer. See Ex parte Potter, 661 So.2d 260, 262 (Ala. 1994) (jurors' visit to the scene of the crime to view the width of the street in a criminally-negligent-homicide case might have affected the jury's verdict, despite *1085 testimony to the contrary); Ex parte Troha, 462 So.2d 953 (Ala. 1984) (juror's communication with his minister brother requesting scripture references during deliberations in rape defendant's prosecution warranted reversal because the misconduct might have influenced the verdict). Consequently, this Court cannot say that the circuit court's error was harmless beyond a reasonable doubt.
For the foregoing reasons, Young's and Davis's convictions and sentences are reversed, and the causes are remanded for further proceedings.
REVERSED AND REMANDED.
Welch, Kellum, and Burke, JJ., concur. Joiner, J., concurs specially, with opinion.
JOINER, Judge, concurring specially.
After this Court's decision in Peak v. State, 106 So.3d 906 (Ala. Crim. App. 2012), Rule 18.4 was amended to include Rule 18.4(g)(2), which provides a mechanism for retaining alternate jurors. Rule 18.4(g)(2) states:
"The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discarded. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."
As the main opinion notes, after the parties concluded their cases and the jury was instructed, the circuit court released the alternate jurors with no instructions, and the jury began its deliberations at 1 p.m. on a Friday. The following Monday, the circuit court decided to release juror S.H. from further jury duty and informed the attorneys that the court would try to contact the released alternate jurors. Defense counsel then moved for a mistrial and asserted, among other grounds, that the circuit court had released the alternate jurors without instructing them not to discuss the case with anyone. (R. 383-84.) In footnote 1 of the main opinion, the Court states that the appellants failed to assert Rule 18.4, Ala. R. Crim. P., as a ground for a mistrial below. Although defense counsel did not specifically mention Rule 18.4(g)(2), the substance of defense counsel's argument was that the circuit court had released the alternate jurors without complying with certain provisions of Rule 18.4(g)(2).
Regardless of whether strict compliance with Rule 18.4(g)(2) is necessary to avoid a mistrial when an alternate replaces a juror after the jury's deliberations have begun, I agree that the procedure used by the circuit court in this case did not meet the minimum requirements discussed in Peak, and that, therefore, the judgments are due to be reversed.

Young and Davis also argue that the circuit court's actions violated Rule 18.4, Ala. R. Crim. P. They, however, failed to assert Rule 18.4, Ala. R. Crim. P., as a ground below; therefore, this issue is not properly before this Court. See Peak, 106 So.3d at 912-14.